Carl **ROBERTS** and Barbara Bookout,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

John **COCCO**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 25708, 25755.

United States Court of Appeals
Fifth Circuit.

Oct. 9, 1969.

Judith A. Brechner, Miami Beach, Fla., for appellants.

Morton Orbach, Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

SIMPSON, Circuit Judge:

We review on a joint record the appeals of Roberts, Bookout and Cocco from convictions in a joint trial for offenses with respect to counterfeit currency of the United States. We find it convenient to discuss and dispose of both appeals involving the three appellants in a single opinion.

The three appellants, Barbara Bookout, Carl Roberts, and John Cocco, were indicted on three counts: The first count charged the appellants with committing and aiding and abetting on April 4, 1967, the substantive offense of passing, uttering, and publishing a counterfeit twenty dollar bill at the Broward Drug Store. The second count charged a similar offense on the same date by passing two counterfeit twenty dollar bills at the Gulfstream Race Track, in violation of Title 18, U.S.C., Secs. 2 and 472. The third charged the trio with conspiring to pass, utter and publish the counterfeit currency in violation of Title 18, U.S.C., Sec. 371.[1] The appellants were tried to a jury and found guilty on all three counts.[2]

We recount the evidence viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1941); Ruiz v. United States, 5 Cir. 1967, 374 F.2d 619. The government's star witness was Pat Miller who had previously pleaded guilty to the conspiracy count. It ap-

---

1. Three other persons were also indicted, Patricia Mary Miller, James Capatorto, and Pasquale Cocco. Miller and Capatorto entered guilty pleas as to the conspiracy count and the remaining counts as to them were dismissed. Pasquale Cocco was tried with the three appellants but was granted a judgment of acquittal on his motion therefor at the close of the government's case in chief.

2. Appellant Bookout received three concurrent two year confinement sentences. Appellant Roberts received two concurrent eighteen month confinement sentences as to the first two counts with imposition of sentence as to the conspiracy count withheld during a three years' probation. Appellant Cocco received three concurrent five year confinement sentences.

pears clear from a careful review of the record that for the jury to reach guilty verdicts against the three appellants it was necessary for the jury to credit Miller's testimony over that of the appellants. The sequence of events related is based largely on Miller's testimony for this reason.

On the morning of April 4, 1967, appellants John Cocco and Carl Roberts arrived at the Hollywood, Florida house, 6312 Hayes Street, where Capatorto and his common law wife, Barbara Bookout, together with Pat Miller resided. Cocco and Roberts remained in the living room while Capatorto went into Miller's bedroom. There he took $2000 in counterfeit money from a plain white envelope and spread it out on Miller's bed. He and Miller then proceeded to wrinkle the money so that it would look used. While the pair was wrinkling the money, Cocco and an unidentified male entered the room and a discussion as to how to pass the money ensued. It was decided that the men would attempt to pass the money at the Gulfstream Race Track. Before leaving, Capatorto gave Miller ten twenty dollar bills and said he was going to the race track. Capatorto drove off in his car accompanied by Cocco. Roberts and the unidentified male also left in another car.

During the course of most of the activities in the Miller bedroom described above, Barbara Bookout was in the bathroom located across the hall. While the discussion in the bedroom was transpiring, Bookout walked into the room, combed her hair briefly at the dresser mirror and walked out. She said nothing to the participants except to exchange pleasantries.

After the men left, Miller and Bookout went into Fort Lauderdale, Florida, to go shopping. The women stopped at the Broward Drug Store where they ate lunch. After finishing the meal Miller told Bookout that she was going to try to pass the money. Bookout warned that she might get caught. Bookout paid for her meal with legal tender and Miller, ignoring Bookout's warnings unsuccessfully attempted to pass a counterfeit twenty dollar bill in payment for her own lunch. The store clerk recognized the money as counterfeit and summoned the police by telephone. Before the police arrived, Miller gave Bookout the nine remaining counterfeit bills. Miller stated, "I asked her to get rid of it for me. And I told her to leave because I didn't want—I didn't think she should be involved". Miller stated that Bookout left and later returned to inform her that she had burned the money.[3] Miller was taken to the police station and Bookout appears to have been arrested later the same day.

In addition to Miller's testimony, the government produced as witnesses two employees of the Gulfstream Race Track located in Hallandale, Florida, who stated that James Capatorto attempted to pass two twenties and was apprehended by them and turned over to state officials. He was later delivered to federal custody. Further the government introduced a plain white envelope which Miss Miller described as similar to the one which contained the counterfeit money when it was spread on the bed in her room. Testimony showed that the envelope was found on top of the toilet tank in the bathroom of the Capatorto home. A fingerprint on the envelope was identified by expert testimony as that of appellant Roberts.

Finally, the government introduced oral statements made by Cocco and

---

3. There is considerable conflict in the records as to the sequence of events that occurred in the drug store. The drug store manager who testified for the government stated that Miss Bookout remained in the drug store until the police took Miss Miller away. Apparently then Bookout, if Miller's testimony is believed, must have received the balance of the counterfeit money after Miller was detained by the drug store officials and before the police arrived, and burned the money between the time the police left and her own arrest. Miss Bookout took the stand and vigorously denied saying, doing, or knowing anything about the counterfeit money or the attempt to utter it.

Roberts to Secret Service Agent Howell after their arrest and following full *Miranda*-type warnings. As related by Howell, Roberts made the following in-custody statement to him:

"Mr. Roberts stated that when he was there at the house an amount of counterfeit money—$20 bills—had been spread out on a bed and that the other defendants had wrinkled and crinkled this money in an effort to make it appear old. He stated that he himself did not wrinkle any of it. He stated that his purpose for going to the house was to go there to pick up counterfeit money, but when he arrived, he had seen Mr. Capatorto and the two women who he was not known to, and had some reservations about dealing with people that he was not acquainted with well. So that after about five minutes at the house he then departed and then returned later that evening and met with Mr. John Cocco, where he obtained approximately $600 of this same counterfeit money which he had secreted in the home of a friend."

The substance of the Cocco statement as testified to by Agent Howell was:

"He (John Cocco) stated that he had been at a house located at 6312 Hayes Street in Hollywood, Florida, on 4–4–67 at approximately noon time; that while at this house he met with several other individuals and that he observed approximately $2,000 in $20 notes spread out on a bed in the bedroom; that these other individuals were wrinkling and crinkling up the money; that some time later he departed this house in the company of another individual and proceeded to Gulfstream Race Track.

"He stated that while at Gulfstream Race Track he borrowed an undetermined amount of money off of the other individual in the denominations of tens and twenties, and that while at the track he observed the other individual being apprehended; that upon observing this, he fled from the track in an automobile."

Each of the defendants took the stand. Their testimony differed in all respects material to guilt from that related by Miss Miller. James Capatorto was called as a witness by Cocco's attorney and his testimony if believed would absolve the appellants of any wrongdoing.

The essence of this appeal centers around the conspiracy count because it is clear that Bookout and Roberts had no connection with the race track incident. Likewise it is obvious that Roberts and Cocco had no connection with the events which occurred in respect to the Broward Drug Store. However, the jury was properly instructed that if they found that the defendants conspired to pass the counterfeit "it had the right to convict any defendant * * * of the substantive offenses charged in Counts 1 and 2, even though they did not directly participate in the substantive offenses or have knowledge of them, provided you find that the acts referred in the substantive counts were committed in furtherance of the unlawful conspiracy or object of the unlawful conspiracy". Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Gradsky v. United States, 5 Cir. 1967, 376 F.2d 993. Thus the sufficiency of the evidence to prove the conspiracy count must be carefully examined.[4]

## I.

## BARBARA BOOKOUT

From careful study of the 800 page record before us we are convinced that the evidence was insufficient to link Bookout with the conspiracy.

---

4. All parties preserved the right to attack the sufficiency of the evidence by moving for judgments of acquittals at the close of the government's case in chief and at the close of all the evidence. The renewal motions were omitted from the original record but the trial court reporter's supplement to the record made pursuant to our order of September 11, 1969, shows that the motions for judgments of acquittals were renewed at the close of all the evidence.

Viewed in the light most favorable to the government, the evidence shows only that Bookout knew of the conspiracy, associated with guilty parties, and destroyed counterfeit money. Bookout's knowledge that there was a plan to pass the counterfeit could reasonably be inferred from two incidents. First, she entered the room while the discussion as to how to pass the bills was occurring. From this the jury was entitled to infer that Bookout had knowledge that there was counterfeit money spread out on the bed and that plans were being made to pass it. Second, Miller testified that Bookout warned her against attempting to pass the bill. This, of course, is further evidence of the fact that Bookout knew of the plan and knew that the money was counterfeit.

Miller's testimony that Bookout destroyed the balance of the counterfeit given to her by Miller no doubt weighed heavily against Bookout with the jury. It seems a reasonable assumption that the jury drew the inference that the destruction of the money demonstrated Bookout's agreement to enter the conspiracy. Essentially then, our task is to determine if this inference was reasonable.

 It is elementary that neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy. United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The elements of a conspiracy are an agreement by two or more persons to combine efforts for an illegal purpose and an overt act by one of the members in furtherance of the agreement. United States v. Falcone, supra; Nelson v. United States, 5 Cir. 1969, 415 F.2d 483; Castro v. United States, 5 Cir. 1961, 296 F.2d 540; Duke v. United States, 5 Cir. 1956, 233 F.2d 897.

 In circumstantial evidence cases such as this, "the test to be applied on motion for judgment of acquittal and on review of denial of such motion is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude". Harper v. United States, 5 Cir. 1969, 405 F.2d 185, quoting Vick v. United States, 5 Cir. 1954, 216 F.2d 228. Crediting all the evidence and all reasonable inferences most favorable to the government, we are unpersuaded that the jury could reasonably exclude the hypothesis that Miss Bookout did not enter into the conspiracy to utter the counterfeit currency.

 Miss Bookout did nothing and said nothing from which the jury could reasonably infer that she entered the conspiratorial agreement prior to the attempt by Miller to pass the bill in the Broward Drug Store. Certainly, no event occurred in the Capatorto home supportive of such an inference. At most, the evidence reveals that Bookout first gained knowledge of the plan when she entered the Miller bedroom to comb her hair. She did not indicate at the time that she gave any attention to the transaction and conversation underway at the bed, but the government is entitled to the inference that she overheard plans being discussed as to methods of using the money.

Nothing that happened at the Broward Drug Store prior to Bookout's destruction of the money aids the government's case. Indeed, the fact, as related by Miller that Bookout warned her not to pass the money indicates rather strongly that as of that time Bookout was not agreeable to becoming a partner in the conspiracy, the object of which was to pass the money. Bookout's payment for her own lunch with legitimate currency is an additional contradiction to her being a member of the conspiracy. It would seem reasonable for a conspirator to use the available counterfeit.

 Ultimately then, the government must depend primarily upon the fact that Bookout destroyed the remaining bills to support the proposition that she was a member of the conspiracy. It is of course true that a person may be held as a conspirator regardless of the

point in time at which he enters it, so long as he enters it with intent to further its objects during the life of the conspiracy. Nelson v. United States, supra; Lile v. United States, 9 Cir. 1958, 264 F.2d 278, 279. The government's theory is then that if Bookout had not agreed previously to enter the conspiracy she adopted the aim of the conspiracy to pass the counterfeit money by destroying the money to prevent discovery of the existence of the conspiracy and to permit it to continue as a going partnership in crime. The reasonableness of this hypothesis may be assumed. But, it is by no means the only reasonable hypothesis. The first to suggest itself is that her action was taken on the spur of the moment as an act of compassion for her friend, Miss Miller. In view of the other circumstances (1) that Miss Bookout did not use any of the money; (2) that she was not a part of the discussion of the counterfeit money in the Miller bedroom; (3) that she paid for her lunch with her own funds even though an opportunity to pass the counterfeit was present; and (4) that she was told to destroy the funds by an alleged co-conspirator who did not want Bookout "to get involved", it simply cannot be asserted that the sole reasonable inference to be drawn from her destruction of the money was that she was a member of the conspiracy. As indicated, Bookout's act was as consistent with the hypothesis that she destroyed the money simply in order to help Miller. The latter we view as the more reasonable of the two assumptions when the other circumstances are weighed. Only the one circumstance may be said to point to guilt as well as to innocence. The other circumstances clearly point to innocence.

In sum, we are left with an abiding conviction that the jury's verdict of guilty as to Bookout is based upon suspicion and surmise only. She associated with the wrong people and was convicted because of guilt by association only. Her conviction for conspiracy may not be permitted to stand since we conclude that the inference of her guilt was not a reasonable one for the jury to entertain. Likewise, the conviction as to Count One, (the passing of a counterfeit bill at Gulfstream Park) must fall because the record is void as to any connection (other than as a member of the conspiracy) with that incident.

Count Two (the Broward Drug Store incident) is more involved. The indictment charged Bookout as a principal under Title 18, U.S.C., Sec. 472, and also as aider and abettor under Title 18, U.S.C., Sec. 2. The question is: Did Bookout aid and abet Miller in passing the counterfeit? We think not.

■■ A person cannot aid or abet a crime which has already been completed. United States v. Ferraro, 5 Cir. 1969, 414 F.2d 802. Title 18, U.S.C., Sec. 472, reads:

"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

Here the uttering, the passing and the publishing of the counterfeit by Miller was an accomplished fact when Bookout destroyed the money. The crime was therefore complete before Bookout acted. That Miller had completed the crime is demonstrated by the fact that Miller had been apprehended by the store officials and was awaiting the arrival of the police before Bookout acted. Bookout's act could not have aided or abetted Miller in the passing of the counterfeit currency because that was already an accomplished fact. It may well be that Bookout could have been charged and convicted as an accessory after the fact on the basis of the destruction of the money as helping Miller escape detection or punishment, but the charge was not so framed in the indictment. Upon remand the district court is directed to enter a judgment of acquittal as to Bookout with respect to

each of the three counts of the indictment.

## II.

### CARL ROBERTS AND JOHN COCCO

Since the arguments raised by these appellants are similar, they will be discussed jointly. The essential theory of the appellants is that there was insufficient evidence to support the jury's verdict. Cocco and Roberts correctly assert that their conviction cannot be based solely upon their confessions or incriminating statements. See Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). They argue that the corpus delicti of the crime must be established by independent evidence including the appellants' connection with the crime before their statements may be admitted.

This argument is foreclosed by this Court's statement in French v. United States, 5 Cir. 1956, 232 F.2d 736, cert. denied 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed. 2d 62 (1956):

"[1–6] Appellant first contends that it was error to convict him upon confessions uncorroborated by proof of the *corpus delicti*. He makes the broad claim that to prove the *corpus delicti* the evidence aliunde the confession must establish every essential element of the offense charged including the connection of the accused with the crime, that is, his identity as the criminal. We do not at all agree. On the contrary, we share the view of most American courts that the phrase '*corpus delicti*' includes but two elements: first, the fact of an injury or loss; and secondly, the fact of *somebody's* criminality as the cause of the injury or loss. Furthermore, Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308, makes it clear that corroborative evidence need not be sufficient, independent of the confessions of the accused, to establish these two elements which constitute the *corpus delicti*. Indeed, it is necessary only for the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the confession. And when this requirement is met, such independent evidence thus serves the dual function of tending to make the confession reliable, while also establishing independently the other necessary elements of the crimes charged. It is therefore sufficient if the corroboration supports the facts sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the confessions must, of course, be sufficient to find guilt beyond a reasonable doubt." [Original emphasis]

See also: Mills v. United States, 5 Cir. 1967, 380 F.2d 335, 336; Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405, 409; Naples v. United States, 1964, 120 U.S.App.D.C. 123, 344 F.2d 508, 513; Caster v. United States, 5 Cir. 1963, 319 F.2d 850, 852; Smyly v. United States, 5 Cir. 1961, 287 F.2d 760, 763, cert. denied 366 U.S. 930, 81 S.Ct. 1654, 6 L.Ed.2d 391 (1961); Belvin v. United States, 5 Cir. 1960, 273 F.2d 583, 585; Sultan v. United States, 5 Cir. 1957, 249 F.2d 385, 388; but see Chief Judge Brown's vigorous dissent in Smyly v. United States, supra, at page 763.

Since the evidence (excluding the incriminating statements) need not establish the connection of the accused with the crime, the question here is simply whether the evidence established that the statements were trustworthy. It is clear from the evidence outside the incriminating statements, the testimony of Miller and Capatorto that a plan existed to pass, utter, and publish counterfeit bills.

 Miller's testimony reveals that Cocco was in the bedroom and took part in the discussion as to how to pass the money. She also stated that Capatorto and Cocco left the house together. Both Capatorto and Cocco admitted that Cocco accompanied Capatorto to the race track. However they denied that Cocco entered the track and placed bets.

Miller's testimony reflects that Roberts was in the Capatorto home when

much of the plot was discussed although he did not take part in the conversation. Roberts' fingerprint was also on a white envelope which Miller described as similar to the one which contained the counterfeit twenty dollar bills. Roberts of course testified that he was in the Capatorto home on the fateful day in question. Roberts also testified that just before his arrest he received a telephone call advising him of the arrest of Capatorto and Cocco and advising him to flee. Too, Roberts testified that he informed Agent Howell of the U. S. Secret Service that he knew where he could get counterfeit money.

This evidence clearly both established the trustworthiness of the extrajudicial statements and served as a predicate for their admission over the "corpus delicti" objections.[5] French v. United States, supra.

▮▮▮▮▮ The extrinsic evidence listed above when coupled with the extrajudicial statements of Roberts and Cocco was sufficient for the jury to reasonably exclude every hypothesis but that each of them was part of a proven conspiracy to pass counterfeit money. If the evidence was sufficient to support the guilty verdict as to the conspiracy, the jury was entitled to hold Roberts and Cocco responsible for the overt acts charged as substantive offenses in Counts One and Two. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Gradsky v. United States, 5 Cir. 1967, 376 F.2d 993, cert. denied Grene v. United States, 389 U.S. 908, 88 S.Ct. 224, 19 L.Ed.2d 224 (1967).

The appellants contend that if the statements were admissible a severance under the *Bruton* rationale should have been made.[6] The basis of this argument is that the jury was allowed to consider the extrajudicial statements made by one conspirator in determining the guilt of another. The appellants assert this claim despite the care taken by the trial judge to instruct the jury not to consider such statements as evidence as to the non-declarant. Agent Howell was explicitly instructed not to mention names when he related the statements given to him by Roberts and Cocco. He followed these directions by such references as "another person", "two males" and the like. The appellants base their claim upon examples like the following. Mr. Howell related in part that Roberts told him:

"* * *

"A Mr. Roberts stated that on April 4, 1967, at approximately noontime he had been at a home in Hollywood, located at 6312 Hayes Street. At this time he had met several persons at this house, a couple of white females and a *couple of males*. (emphasis supplied)"

* * * * * *

"* * * Mr. Roberts stated to me that on April 4, 1967, he had been at a house located on Hayes Street, 6312 Hayes Street in Hollywood, Florida; that he had gone there for the purpose of picking up some counterfeit money. While at the house, he met several persons and that some of these persons were wrinkling approximately $2,000 in counterfeit currency on a bed in the house."

The appellants conclude that the jury could not help but furnish the missing names for themselves and conclude that

---

5. The trial court below held a lengthy hearing as to the voluntariness of the statements and concluded that they suffered no *Miranda* malady. The appellants make no assertion here that the statements were involuntarily given. The record would amply refute such an assertion, if made. Roberts admitted that he received full *Miranda* warnings although he refused to sign a "Consent to Speak" form. Roberts also denied making the statement that Howell testified to. Cocco stated on direct examination that Mr. Howell advised him of his constitutional rights and that he signed a "Consent to Speak" form, but denied making the statement to Howell related by that witness.

6. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Cocco, the non-declarant in the given instance, was present. The contention is made in reverse regarding Cocco's statement, that is that Roberts' name would suggest itself and be supplied without difficulty. Both appellants argue earnestly that severances should have been granted and that the district court should have granted their motions for a new trial upon the ground of refusal to sever and consequent conviction in a joint trial.

■■■■■■ While the appellants' argument has received our careful consideration, we are convinced that in the circumstances presented it has no merit. First, in our view, *Bruton* is inapplicable. There, the evil sought to be eliminated was deprivation as to another defendant on trial of his constitutional right of cross-examination secured by the Confrontation Clause of the Sixth Amendment, upon the admission into evidence of the confession of a non-testifying codefendant. Here of course every defendant testified, including those who had previously entered guilty pleas, Capatorto and Miller. The right to confrontation and cross-examination was hence fully preserved. This Court in United States v. Venere, 5 Cir. 1969, 416 F.2d 144 spoke to the very issue raised:

> "*Bruton* is concerned with the impact upon the non-confessing defendant of the revelations about him made by his confessing co-defendant, and with the inability of the traditional limiting instructions to assure the differentiation by the jury between the two. *That problem does not exist where each co-defendant is confronted by evidence of his individual admission of guilt.*" (emphasis added)

Finally even if severance should have been granted under *Bruton,* no prejudicial error is demonstrated since Roberts and Cocco each was confronted with his voluntary, extrajudicial, incriminating statement. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■■■■ The hard core, inescapable problem confronting the appellants Roberts and Cocco in this case was the issue of credibility, nothing more. The government proved that a conspiracy to pass counterfeit money was formed, it further proved that Cocco and Roberts were present during the planning stage of the conspiracy, and then introduced through the testimony of Secret Service Agent Howell the statements of Roberts and Cocco which indicated from their own mouths that they entered into the counterfeit passing scheme, in a word, the conspiracy. Roberts and Cocco took the stand, denied making the statements, and attempted to convince the jury that they were at the Capatorto home for legitimate purposes. A bona fide conflict in the evidence was presented, a conflict to be resolved by the jury, not by this Court. It would be an affectation to cite the continually recurring situations where this has been pointed out to appellants from criminal convictions. Here the conflict as to the guilt or innocence of Roberts and Cocco was put to rest by the jury's verdict, returned under fair and full instructions. It must remain at rest.

We affirm the convictions of Carl Roberts and John Cocco. The judgment of conviction as to Barbara Bookout is reversed, with directions to enter judgment of acquittal.

Affirmed in part, reversed in part.