**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis AGUIAR, Jorge Palenzuela and
Julio Morejon-Pacheco,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Virgen PALENZUELA,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Julio MOREJON–PACHECO and Luis
Aguiar, Defendants-Appellants.**

Nos. 78–5748, 79–1419 and 79–2084.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1980.
Rehearing and Rehearing En Banc
Denied March 10, 1980.

Walter E. Gwinn, Miami, Fla., for Palenzuela.

Michael J. Osman, Miami, Fla., for Morejon-Pacheco.

Robert A. Spiegel, Coral Gables, Fla., Richard J. Essen, Miami, Fla., for Aguiar.

Bruce A. Zimet, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH, VANCE and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

These appeals arise out of a federal prosecution of Jorge Palenzuela, Virgen Palenzuela, Luis Aguiar, Julio Morejon-Pacheco and others [1] for offenses relating to their alleged involvement in the illegal trafficking of cocaine. After a jury trial in federal district court, Aguiar, Morejon and Jorge Palenzuela were convicted of conspiracy to distribute cocaine, 21 U.S.C. § 846. Aguiar and Morejon were also convicted for distributing cocaine, *id.* § 841(a)(1) and 18 U.S.C. § 2. Morejon additionally was convicted of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1),[2] and of the knowing use of a communications facility in the commission of a narcotic-related felony, *id.* § 843(b). The case of Virgen Palenzuela, charged with conspiracy to distribute cocaine and with possession with the intent to distribute cocaine, *id.* §§ 841(a)(1), 846, was severed from that of her co-defendants. Her appeal is from the denial of her motion for dismissal on double jeopardy grounds.

1. The second superceding indictment, upon which the defendants were tried, named Jose Aleman, Luis Aguiar, Juan Basilia a/k/a Juan B. Zigler or Sigler, Augusto Gonzalez, Julio Morejon-Pacheco, Rene Benitez, Jorge Palenzuela, Virgen Palenzuela, Oscar Torres, Mariana Torres, and John Doe a/k/a Carlos, for their involvement in the illegal trafficking of cocaine. Prior to trial, Aleman entered a guilty plea. John Doe a/k/a Carlos and the Torres were not defendants in this prosecution. Benitez was convicted with appellants, but failed to appear for sentencing. Gonzalez was also convicted, but was later granted a new trial by the court because of the discovery of additional evidence. Basilia was convicted as well.

2. The trial court granted Jorge Palenzuela's motion for judgment of acquittal on the charge of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1).

For reasons stated below, the challenges to the trial judge's rulings are for the most part without merit. We reverse, however, the district court's decision denying Jorge Palenzuela's motion for acquittal based on the insufficiency of the evidence to sustain his conspiracy conviction.

## I. Facts

In early April 1977, Agent Norman Jezzeny of the Nevada district of the Drug Enforcement Administration and Agent Jorge Fonte of the State of Nevada Division of Investigation of Narcotics began an investigation into drug trafficking in Las Vegas, Nevada. Acting in their undercover capacity, they contacted Jose Aleman in Las Vegas, introducing themselves as "men in the drug business," and subsequently expressed their interest in a drug deal. Aleman mentioned that he knew a man in Key West, Florida, that might be able to help them, and that he might arrange a meeting with this man.

Fonte and Jezzeny flew to Florida on April 26, 1977, to meet Luis Aguiar, the person introduced by Aleman. They met the next day in Key West. Because Jezzeny does not speak Spanish, Fonte translated the conversation, as he continued to do on subsequent occasions. The agents asked Aguiar about the availability of a regular supply of significant quantities of cocaine. Aguiar had none, but promised to look into some contacts for the agents. Nothing else came of this meeting, and the agents returned to Las Vegas.

They returned to Miami in June and July to meet with Aguiar. The three agreed that, if an initial transaction for cocaine culminated successfully, the agents would begin purchasing a regular monthly supply of cocaine. Apparently realizing that alone he could not provide the agents the

amounts of cocaine sought, Aguiar began seeking alternative sources of the illicit drug.[3] At their July 15 meeting, therefore, Aguiar introduced the agents to Rene Benitez, and Aguiar told Benitez of his difficulties in procuring cocaine for the agents and asked Benitez for assistance. Benitez, in turn, brought the agents and Aguiar to Julio Morejon-Pacheco. Morejon showed Fonte and Jezzeny samples of various lots of cocaine and attempted to secure the ten kilograms of cocaine they sought. The agents, Morejon and Benitez held further discussions in subsequent days to settle the price ($380,000) and mode of exchange.

Morejon, with Benitez and the agents present, made several telephone calls on July 17, 1977, to set up the cocaine transaction. In two of these calls, Morejon spoke with individuals whom he addressed as "Mami" and "Pepi."[4] After these calls, they discussed a $25,000 deposit to hold the ten kilograms of cocaine until the next day. Saying that Aguiar wanted this transaction to go through, Benitez offered to guarantee the $25,000 deposit.

After a number of changes in the plans for the transaction, Benitez and Morejon told Jezzeny on the day of the transaction, July 18, that they had two safe houses. Morejon and Jezzeny would go to one house to view and inspect the cocaine, while Benitez and Fonte proceeded to the second safe house, where another man would help count the purchase money brought by Fonte. When all parties were satisfied, Fonte was to leave the money at the counting house, and Jezzeny would take the cocaine with him from the other safe house.

Jezzeny went with Morejon to the home of Jorge and Virgen Palenzuela (husband and wife). Jorge was not at home.[5] Virgen took the men to the bedroom, where she produced and displayed five and one-

---

3. One man known only as Carlos met the agents at a Miami bar on July 14. He offered Fonte seven kilograms of cocaine, which were refused.

4. "Pepi" was a nickname used by Jorge Palenzuela, according to the testimony of his wife, Virgen.

5. Oscar Torres, described as an old man in a white suit, was sitting in a front room of the Palenzuela house when Jezzeny arrived. Later, Mrs. Torres arrived and joined her husband. During the cocaine transaction, the couple remained in the front room.

half (of the ten) kilograms of cocaine to Jezzeny. He weighed the cocaine on a triple-beam scale that was on Mrs. Palenzuela's dresser and performed several field tests. She then offered to give Jezzeny an extra pound of cocaine, which she obtained from a drawer in her bathroom, if he was dissatisfied with the quality of the ten kilograms.[6] The three then waited for the call from the second safe house. On the way to the "counting" house, the location of which was unknown to Fonte, Fonte mistakenly arrested Benitez, searched him and removed a piece of paper with an address written on it. Fonte proceeded to the address and knocked on the door. Mrs. Ortega, who is Mrs. Palenzuela's mother and the house's owner, opened the door.

A few moments earlier, Jorge Palenzuela had called Morejon. They spoke in Spanish, and Morejon then reported to the others that they were "not there yet" (referring to Benitez and Fonte). The telephone conversation between Morejon and Jorge resumed until Jorge said "They're here," handed the telephone to Fonte and left the room. Fonte then told Morejon that the deal was off and to meet him with Jezzeny at a certain location.[7] Morejon told the others that something was wrong.

On hearing this news, Mrs. Palenzuela picked up the box containing the five and one-half kilograms of cocaine, and told Jezzeny that "I'm going to give it back to the people who own it. They have to take it someplace where it's safe." She took the box to the front of the house and gave it to Mrs. Torres, who left the house. The bonus pound remained in the house.

Shortly thereafter, Jezzeny and Morejon arrived at the designated location and met Fonte. Morejon was then arrested. Jez-

zeny, Fonte, other DEA agents and several uniformed police officers in six or seven police cars proceeded to the Palenzuela home. When they arrived, approximately twenty-five minutes after Jezzeny and Morejon had left, the police and agents found the Palenzuelas outside. Mr. Palenzuela was playing with the children, and Mrs. Palenzuela was talking with neighbors and Luis Triana. They immediately arrested Mr. and Mrs. Palenzuela and Mr. Triana. None of the defendants or neighbors offered any resistance nor were any of them armed. The agents next, without consent, entered the house and conducted a search of the premises that lasted about twenty minutes. The agents took the defendants through each room as they searched it. They found the pound of cocaine and $26,000 in the bathroom adjoining the bedroom. The arrests and search were both warrantless.

The trial of Virgen Palenzuela, Jorge Palenzuela, Aguiar, Benitez, Morejon, Gonzalez and Basilia commenced on September 25, 1978, before a jury in the Southern District of Florida. Following the completion of the government's case, Virgen Palenzuela informed the court that she had elected to testify. Some of her co-defendants moved for a mistrial or severance of their cases. She was cross-examined by government counsel and by counsel for Morejon.[8] At the completion of her testimony, her counsel informed the court of his intent to comment during closing argument on Morejon's failure to testify. All defendants, except Virgen, renewed the motions for a mistrial or severance.

The court, however, severed the trial of Mrs. Palenzuela and proceeded with the tri-

**6.** When Jezzeny asked where the other five kilograms were, Mrs. Palenzuela responded that they were at a nearby house.

**7.** After Fonte left Mrs. Ortega's home, Mr. Palenzuela returned to his own home.

**8.** Mrs. Palenzuela testified that she knew Morejon and indicted coconspirators Mr. and Mrs. Torres, and that Oscar Torres had left a package at her house to be held for Morejon. She denies knowing that the package contained co-

caine, denies having discussed the deal with Jezzeny and Morejon, and denies promising to supply Jezzeny with any additional quantity of cocaine. She also testified to her husband's extreme anger upon learning of her decision to cooperate with Morejon. She concedes, however, that she acted as a nonparticipating interpreter for the two men and that she transferred the cocaine from the bathroom to the bedroom and back.

al against the remaining defendants. Mrs. Palenzuela did not object, although she had not moved for the severance. The remaining defendants were convicted by the jury.

## II. Severance of Virgen Palenzuela and Double Jeopardy Bar

On appeal Virgen Palenzuela argues that the trial court improperly denied her motion to dismiss the indictment. She contends that she was wrongly severed from the trial of her six co-defendants and that a retrial would violate her constitutional protection against double jeopardy. We disagree.

■ Once jeopardy attaches, as it did for Virgen Palenzuela when the jury was sworn to try this case, *Illinois v. Somerville*, 410 U.S. 458, 467–68, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), a criminal defendant normally will not lose the opportunity to seek a favorable verdict from the jury and will not be required to stand trial a second time, *Arizona v. Washington*, 434 U.S. 497, 503, 504, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717 (1978); *Wade v. Hunter*, 336 U.S. 684, 688–90, 69 S.Ct. 834, 93 L.Ed. 974 (1949). An exception to this rule is made if the defendant consents to a retrial, *United States v. Kessler*, 530 F.2d 1246, 1255 (5th Cir. 1976) or if a retrial before a new jury is mandated by some form of manifest necessity, *United States v. Kin Ping Cheung*, 485 F.2d 689, 690–91 (5th Cir. 1973). *E. g.*, *Wade v. Hunter*, 336 U.S. at 690–92, 69 S.Ct. 834 (witness temporarily unavailable during war); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (juror prejudice); *United States v. Alford*, 516 F.2d 941, 947–49 (5th Cir. 1975) (mere convenience not enough).

■ In *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962), we held that the fifth amendment requires severance if a defendant exercises his privilege against self-incrimination and a co-defendant's attorney will make prejudicial comments about his privileged silence. *Id.* at 154. All parties to this action agree that Virgen's decision to testify and her attorney's proper decision to draw the jury's attention to her co-defendants' silence would penalize the fifth amendment privilege of her co-defendants and would create the sort of incompatibility between their defenses that under *De Luna* requires a severance. We believe that severance, and hence retrial, of Virgen's case was justified by the manifest necessity of protecting the fifth amendment rights of the other defendants under *De Luna* and did not violate the double jeopardy protection of Virgen.

■ The parties disagree, however, as to *who* should have been severed. Contrary to Virgen's assertion, *De Luna* does not provide a rigid answer to this question. In light of the principles of *Arizona v. Washington*, once a severance is found to be warranted by manifest necessity, the trial court has sound discretion over who is to be retained and who is to be severed. *See* 434 U.S. at 506, 98 S.Ct. at 830 n. 18, 832–34 (1978).

■ The trial court did not abuse its discretion in ordering Virgen's retrial. *Cf.* *United States v. Alford*, 516 F.2d at 947–49 (improperly considering convenience); *United States v. Kin Ping Cheung*, 485 F.2d at 691–92 (must consider alternatives to mistrial and must not facilitate the potential for prosecutorial misconduct). The fact that Virgen was the only defendant not seeking a severance, although she did not object to the severance, is simply one of many factors that properly entered the district court's decision. That fact is not, however, dispositive. In light of the district court's thoughtful and scrupulous consideration, we affirm the decision to sever Virgen and to order her retrial. *See Arizona v. Washington*, 434 U.S. at 514–516, 98 S.Ct. at 835–36.

## III. Nonseverance of Jorge Palenzuela

As previously noted, severance was necessary below. Aguiar and Morejon argue, however, that the trial court's severance of Virgen Palenzuela alone was error because Jorge remained a defendant in their case and Jorge's lawyer, who represented both Palenzuelas, retained a duty to comment on Morejon's failure to testify. This argument

fails because it rests on the fallacious theory that Jorge's defense, like his wife's, was antagonistic to the defenses of Aguiar and Morejon.

■ A trial court has a duty to sever the trials of co-defendants with mutually antagonistic defenses to preserve their rights to a fair trial. *De Luna* resists the situation in which one defendant's counsel properly wishes to contrast his client's testimony with the silence of a co-defendant, who does not want to have his fifth amendment right not to testify abridged.

■ There is no antagonism between the defenses of Jorge and of his co-defendants. Jorge's defense—built primarily on his wife's testimony, *see* note 8 *supra*—is that he did not participate in the cocaine deal and that he was incensed by and expressly repudiated his wife's activities and her decision to allow the transaction to take place at their home. That defense of ignorance and then anger differs markedly from his wife's defense that she had some idea of what was going on and that she had agreed to do a favor for Morejon. Thus Jorge and Virgen were not alter egos each to the other. Although Virgen's defense is antagonistic to that of Morejon and Aguiar, Jorge's defense cannot be similarly characterized. No evidence in the record supports the contention of Morejon and Aguiar that their defenses were antagonistic to Jorge's defense.

■ The trial court's decision concerning severance is discretionary, absent a showing of unfairness resulting from the presence of mutually antagonistic defenses, which Morejon and Aguiar have not established. A decision not to sever will not be disturbed, unless the trial court abused its discretion or some prejudice resulted from trying the defendants together. *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978); *United States v. Perez*, 489 F.2d 51, 65 (5th Cir. 1973), *cert. denied sub nom. Hamilton v. United States*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). That discretionary decision was made below in a manner that was sensitive both to the rights and the relations of the parties and to the impact that Jorge's defense would have on the jury's deliberations.

### IV. Comments by Jorge Palenzuela's Attorney

Aguiar and Morejon claim that the following comment by counsel for Jorge Palenzuela, to which they did not object, constituted reversible error because it abridged their fifth amendment right to silence, *see Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

> Mr. Morejon is lifelong friend of their family. And [Virgen Palenzuela's] father and her mother and all of her brothers, and whoever that she said that she had.
>
> But, in any event, she told her husband what she had done. She said that her husband raised all manner of hell and told her that she surely must be crazy. And stormed out of the house.
>
> She was under oath. *No testimony to the contrary.*

(Emphasis added.) They are mistaken.

■ Comments that undermine a defendant's fifth amendment right to silence can vitiate a conviction. *See, e. g., United States v. Edwards*, 576 F.2d 1152, 1154 (5th Cir. 1978); *United States v. Henderson*, 565 F.2d 900, 905 (5th Cir. 1978); *De Luna v. United States*, 308 F.2d at 154. It makes no difference that the comments were made by persons other than the prosecutor, *e. g., United States v. Kaplan*, 576 F.2d 598, 600 (5th Cir. 1978), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979), or that the comments were indirect, *United States v. Brown*, 546 F.2d 166, 173 (5th Cir. 1977).

■ The comments of Jorge Palenzuela's attorney, however, were not intended, and would not naturally and necessarily be viewed by a jury, as a comment on Aguiar's or Morejon's silence. *See United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977). The comments of Mr. Palenzuela's attorney clearly aimed toward two ends. First, they reminded the jury of Virgen's testimony describing Jorge's discovery of the proposed

cocaine transaction and his reaction to it. Second, they pointed out the government's lack of evidence on Jorge's involvement in the conspiracy. The lack of any purpose of commenting on his co-defendant's silence, suggested by Aguiar and Morejon, is reflected in their failure to object to the comment when it was made. That fact is significant considering the vigilant and vigorous defenses that co-defendants' counsels provided their clients, and the need to look at the comments in context. *United States v. Sorzano*, 602 F.2d 1201, 1202 (5th Cir. 1979).

Because no objection was raised to the challenged comment, reversal is warranted only upon a showing of plain error. *United States v. Cook*, 592 F.2d 877, 879–80 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979); Fed.R. Crim.P. 52(b). *See also, Benham v. United States*, 215 F.2d 472, 473 (5th Cir. 1954). Aguiar and Morejon have neither established the occurrence of plain error below nor of any error at all. Their counsel was at most entitled to seek cautionary instructions from the trial court with respect to the challenged comments made by counsel for Jorge Palenzuela.

### V. Sufficiency of the Evidence Supporting Jorge Palenzuela's Conviction

At the conclusion of the taking of the testimony in the case, the district court granted Jorge Palenzuela's motion for judgment of acquittal as to Count III, "possess[ion] with intent to distribute a controlled substance." The court, however, denied his motion for judgment of acquittal as to Count I, "conspiracy to . . . distribute multi-kilogram quantities of a Schedule II narcotic controlled substance, to-wit: cocaine."

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices read in support of the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Barresi*, 601 F.2d 193, 195 (5th Cir.

1979). We seek to determine whether jurors might reasonably find the evidence inconsistent with every reasonable hypothesis except that of guilt. *United States v. Lonsdale*, 577 F.2d 923, 925 (5th Cir. 1978); *United States v. Squella-Avendano*, 478 F.2d 433, 436 (5th Cir. 1973); *United States v. Sidan-Azzam*, 457 F.2d 1309, 1310 (5th Cir. 1972).

Our review of the record discloses no evidence sufficient to show that Jorge had agreed to be involved in a conspiracy to distribute cocaine. The sole evidence against Mr. Palenzuela is as follows: (1) Virgen Palenzuela's uncorroborated testimony that her husband used the nickname "Pepi," the name of a party to whom Mr. Morejon spoke; (2) Jorge's presence at the home of his mother-in-law, the second safe house, at the time the counting was to have occurred; and (3) his saying, "They're here," before handing the telephone to Fonte.

The trial court specifically found that there was insufficient evidence to establish that Jorge was guilty of possessing the cocaine found in his home. The court thought, however, that the statement, "They're here," tended to indicate that Mr. Palenzuela had sufficient knowledge of the drug transaction.

In *Roberts v. United States*, 416 F.2d 1216 (5th Cir. 1969), we said:

It is elementary that neither association with conspirators nor knowledge of illegal activity constitute proof of participation in a conspiracy.

*Id.* at 1220 (*citing United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940)). *Roberts* indicates that mere knowledge of the purpose of a conspiracy or association with conspirators, without an agreement to cooperate in the crime, is not sufficient to make one a conspirator. *United States v. Morado*, 454 F.2d 167, 175 (5th Cir.), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972); *see United States v. Tyler*, 505 F.2d 1329, 1332 (5th Cir. 1975). The requisite fact of intentional agreement or participation cannot "be made

out by piling inference upon inference," *Ingram v. United States*, 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959) (*quoting Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943)), or by "suspicion and innuendo," *United States v. Palacios*, 556 F.2d 1359, 1365 (5th Cir. 1977). *Cf. United States v. Perez*, 489 F.2d at 73 (repeated actions of participants in scheme sufficient).

On the facts of this case, insufficient evidence existed for a reasonable jury to infer that Jorge Palenzuela was a party to an illegal conspiracy. *E. g., United States v. Littrell*, 574 F.2d 828, 832–34 (5th Cir. 1978). It is tempting, although all too often wrong, to suppose that mere presence is tantamount to participation, but "actual presence at the scene of the crime is not sufficient." *United States v. Caro*, 569 F.2d 411, 418 (5th Cir. 1978). The statement "They're here," standing alone, likewise reveals nothing of consequence here. This statement could have just as easily been made by any innocent bystander. The conviction of Jorge Palenzuela must, therefore, be reversed.

### VI. Search and Seizure at the Palenzuela House

A motion to suppress the evidence found at the Palenzuela home was filed on behalf of the defendants on October 7, 1977. The United States magistrate took testimony and recommended denial of the defendants' motion to suppress. The trial court entered its order denying the defendants' motion on February 6, 1978.

■ The general rule is that a warrantless search of a dwelling cannot be made incident to an arrest occurring outside the building. An important exception to this rule is made if the delay from securing a warrant would seriously threaten the lives of the police or of others. The trial court denied suppression of the cocaine because it concluded that the requisite "threat to safety" existed in this case.

■ Jorge Palenzuela and Morejon have attacked this decision on appeal. We conclude, however, that we need not decide the issue today. Jorge Palenzuela's conviction is reversed on other grounds. Morejon, on the other hand, has no standing to raise this question. In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Supreme Court articulated the accepted test for standing to contest an allegedly illegal search and seizure under the circumstances arising in this case.

> [T]here is no standing to contest a search and seizure where . . . the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

*Id.* at 229, 93 S.Ct. at 1569. Because Morejon does not claim and the record does not indicate that the indictment charged him with possession at the time the search occurred, he lacks standing to challenge its legality. *United States v. Hodges*, 606 F.2d 520, 523 (5th Cir. 1979); *United States v. Byers*, 606 F.2d 1130, 1132 (5th Cir. 1979). *See Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

### VII. New Trial and Evidentiary Hearing Regarding Fonte

After their convictions, Aguiar and Morejon moved for a new trial. They attached to this motion a transcript of a preliminary hearing in Nevada state court involving coconspirator Aleman (charged with trafficking in heroin) during which Fonte testified. They also submitted posttrial affidavits of Aleman and Ramon Gutierrez to the effect that Fonte falsely testified at trial. They also submitted additional transcripts and reports that they claimed to establish Fonte's reputation and history of false testimony in unrelated matters.

The trial court denied the new trial motion, and did so without holding an evidentiary hearing on the accusations. Aguiar and Morejon contend that the trial court

abused its discretion in failing to conduct an evidentiary hearing and, in the alternative, in denying their new trial motion. We disagree with that contention.

The heart of this challenge is the contention that Fonte's prior testimony in the Nevada proceeding was in direct conflict with, or impeaches his credibility with respect to, his testimony at the trial below. From this contention Aguiar and Morejon argue that their convictions were obtained through the government's knowing use of false evidence and perjured testimony on material issues and that the prosecution's failure to disclose this prior testimony violated the standing discovery order and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Aguiar and Morejon also contend that Aleman, who was familiar with Fonte's prior testimony, was impermissibly "hidden" by the prosecution during the trial.

▇▇▇▇ After a careful examination of the transcripts and affidavits, we see no significant inconsistency or discrepancy in Fonte's testimony on any material issue involved below or on any matter that constitutes impeaching evidence. Appellants' perjury argument, therefore, is groundless. To establish a violation under *Brady*, Aguiar and Morejon must establish "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972); *United States v. Anderson*, 574 F.2d 1347, 1353 (5th Cir. 1978). *See Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. 1194. Assuming that appellants have established (a), they have not shown (b) and (c) because there is no reasonable likelihood that "the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976). *See id.* at 112–14, 96 S.Ct. 2392; *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Barham*, 595 F.2d 231, 241–43 (5th Cir. 1979); *United States v. Herberman*, 583 F.2d 222, 228 (5th Cir. 1978); *Galtieri v. Wainwright*, 582 F.2d 348, 362 (5th Cir. 1978) (en banc, plurality opinion); *United States v. Anderson*, 574 F.2d 1347, 1354 (5th Cir. 1978). The undisclosed prior testimony was neither material, favorable nor exculpatory. The prior testimony similarly does not constitute "impeaching evidence." *United States v. Anderson*, 574 F.2d at 1354. The production of the earlier testimony would not have created a reasonable doubt of defendants' guilt that did not otherwise exist. *See United States v. Agurs*, 427 U.S. at 112, 96 S.Ct. 2392. No evidence suggests a government plan to hide Aleman, his testimony in the Nevada proceeding, or Ramon Gutierrez.[9] Finally, we see no reason why the district court should have held an evidentiary hearing. The trial court, therefore, did not abuse its discretion in denying the new trial motion or in not conducting an evidentiary hearing. *See United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977).

### Conclusion

The convictions of Luis Aguiar and Julio Morejon-Pacheco are affirmed, as is the district court's denial of Virgen Palenzuela's motion for dismissal. The conviction of Jorge Palenzuela is reversed.

AFFIRMED IN PART; REVERSED IN PART.

---

**9.** In light of these conclusions, we need not reach the merits of the government's argument regarding due diligence. *United States v. Beasley*, 582 F.2d 337 (5th Cir. 1978).