**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Willie Frank WILSON, Defendant-Appellant.**

**No. 73–2641**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1973.

---

* Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Victor Arditti, El Paso, Tex. (court appointed), for defendant-appellant.

William Sessions, U. S. Atty., San Antonio, Tex., Ronald F. Ederer, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before GEWIN, COLEMAN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

### I

On April 19, 1973, a grand jury returned a three-count indictment charging appellant Willie Frank Wilson with (1) defrauding the Texaco Oil Company by use of a stolen credit card in violation of 18 U.S.C. § 1341; (2) interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312; and (3) transportation of a firearm in foreign commerce in violation of 18 U.S.C. §§ 922(g) and 924(a). On May 3, 1973, a trial ensued which resulted in a jury verdict of guilty on all three counts. Accordingly, the district court entered a judgment of conviction, sentencing Wilson to five years on each count, the sentences to run consecutively.

### II

The facts giving rise to appellant's conviction may be summarized with brevity. On the evening of February 19, 1973, appellant and his brother, Nanthenial, were stopped at a border crossing between Juarez, Mexico and El Paso, Texas. A customs agent asked appellant to get out of the automobile so he could make a routine search of its contents. Appellant complied and during the search of the automobile the agent found a loaded pistol under the passenger's side of the front seat of the car.

The agent's suspicion was aroused and appellant and his brother were taken to a room for a personal body search. This search produced a Texaco credit card issued in the name of R. H. Gott. Furthermore, a check on the automobile revealed that it had been reported stolen by the Palo Alto, California Police Department.

Armed with this knowledge the customs agents called in the Federal Bureau of Investigation. Later that evening F.B.I. Agent Steven Walker arrived at the custom's station and advised appellant of his *Miranda* protections. Appellant responded that he understood his rights and signed a waiver of rights statement. Wilson told the agent that he had been to Pensacola, Florida on personal business and was returning to

Palo Alto, California. He further stated that he had rented the car in Palo Alto and was in the process of returning it. He asserted that the credit card had been sent to him in Pensacola by C. M. Davis of San Francisco to pay for gasoline expenses on his return trip to California and that his mother had given him the gun to provide for protection on his return trip.

At trial, Mrs. R. H. Gott testified that she had lost her Texaco credit card at a Berkeley, California theater on August 28, 1972. She disavowed knowing a person named C. M. Davis or the appellant. Attempts by the F.B.I. to locate C. M. Davis proved fruitless.

Leonard W. Roberds, who was the manager of rentals at the Lutz Ford Sales in Palo Alto, California, testified that on December 29, 1972, appellant signed an automobile rental agreement with him and obtained possession of the vehicle. According to the agreement the vehicle was to be used in the Bay area and was to be returned on January 7, 1973. At the time of rental, appellant told Roberds that he was going to drive the automobile to the San Francisco airport, pick up his mother and then drive her around the Bay area.

When the vehicle was not returned by the lease termination date, Roberds attempted to telephone the reference supplied by appellant on the rental agreement. After several unsuccessful calls, a female answered the phone and Roberds informed her that it would be necessary for appellant to return the rented automobile in order to renew the lease since the December 29th contract was null and void. The party responded that she was in contact with appellant and would convey this information to him. As time continued to lapse, several further calls to the listed reference proved unproductive as did attempts to locate appellant's alleged employer listed in the rental agreement. Finally on February 6th Roberds reported the automobile as stolen to the Palo Alto police.

### III

Appellant seeks a reversal of his conviction on two grounds. First, he contends that the evidence fails to establish that the rented automobile had been stolen. Secondly, he alleges that comments by the trial court evidenced bias against him and unduly prejudiced his defense. We find no merit in either of these contentions and affirm the judgment of conviction.

Essentially, appellant asserts that once a motor vehicle is leased for a time certain, it cannot thereafter become the object of theft as a result of the lessee's actions. Appellant's rather limited definition of the word "stolen" as used in Dyer Act prosecutions has been rejected. Our previous holding in United States v. Richards, 425 F.2d 432, 434 (5th Cir. 1970) is dispositive of appellant's argument. There the court stated:

> The law is well settled that although one may lawfully obtain possession of a vehicle through rental agreement or otherwise, a jury may conclude from adequate evidence that he intended to steal the car. It is similarly settled that an avowed intention to return the car is no defense if the accused exceeds the scope of his authorization or contractual rights and thereby deprives the owner of the benefits of ownership. (citations omitted) Id.

Thus, what may originally be a valid lease agreement of a motor vehicle can ripen into a Dyer Act violation.[1]

The facts adduced at trial clearly establish that appellant's conduct deprived the owner of possession and the benefits of ownership of the vehicle here involved. Merely because appellant might have eventually returned the rented automobile is no defense to the offense charged.[2] The evidence shows that appellant acted with the intent to use the vehicle for his own convenience in contravention of the owner's rights under the rental agreement.

---

1. *Accord,* United States v. Dillinger, 341 F.2d 696, 697 (4th Cir. 1965).

2. *See* United States v. Bruton, 414 F.2d 905, 909 (8th Cir. 1969).

During the course of the proceedings below the appellant attempted to interject many irrelevant issues and made several objections to the introduction of evidence by the Government. Although a defendant has a perfect right to object to testimony or evidence which he feels is inadmissible, the trial court has a corresponding duty to rule on such objections according to its view of the law. Furthermore, a trial judge may interrogate witnesses in appropriate circumstances in order to make certain that the facts are accurately presented to the jury.[3]

A review of the record demonstrates that the trial court revealed no bias by its comments and questions during the course of the trial or its rulings on the various motions made by appellant. A trial judge has the right and the duty to participate in the conduct of the trial proceedings to insure that justice is done. The actions taken in the instant case were well within the discretion vested in the trial court.[4]

The judgment is affirmed.

3. Hellman v. United States, 339 F.2d 36, 37 (5th Cir. 1964).

4. *See* Posey v. United States, 416 F.2d 545 (5th Cir. 1969) ; United States v. Bays, 448 F.2d 977 (5th Cir. 1971).