**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joan Paulette JOHNSON,
Defendant-Appellant.**

No. 76–4272.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1977.

---

Steven Wisotsky, Coconut Grove, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Nathaniel H. Speights, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GODBOLD, and FAY, Circuit Judges.

THORNBERRY, Circuit Judge:

In this challenge to her conviction for importation and possession of cocaine, Joan Johnson (defendant below) asserts that in the prosecution's case in chief, prosecution witnesses improperly commented on her post-arrest silence. We reverse and remand, finding certain testimony to have been admitted improperly.

Defendant had been in Panama for about six days at the end of January 1976, in the company of her young son and another woman, Ellen Levy. She re-entered the United States through the Miami airport, and passed through customs there. The inspecting officer detained defendant because, after unpacking her suitcase, he noticed that its sides were heavier and firmer than was usual for bags of that type. In a separated detention area, the officer punched an awl through the side of the suitcase and discovered white powder which field tested positive for cocaine. Defendant

acted surprised upon learning that cocaine had been found in her suitcase. The suitcase then was disassembled, and 1910 grams of cocaine were found hidden within the metal frame of the suitcase.

Defendant was placed under arrest and given her *Miranda* warnings. The government charged her with and prosecuted her for importation of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 952(a), 960(a)(1). Each of these crimes requires knowledge and intent. Johnson's sole defense at trial was that she did not know that cocaine was in the suitcase. Nevertheless, the jury convicted her.

On appeal, defendant challenges four instances of testimony. That testimony was given by a customs inspector and a DEA officer. They testified that after Johnson had been arrested and read her *Miranda* rights, she refused to sign a waiver of her rights or to "cooperate" and, though she stated that she had a logical explanation for the presence of the cocaine, she declined to elaborate on her explanation until she obtained legal advice. Then she affirmatively denied knowing that the cocaine was in her suitcase. The text of the challenged testimony follows:

*First Instance*—Inspector Murphy the witness (Tr 20, 21):

Prosecutor: Q  Did you have any conversation with the Defendant as to your findings?

Agent Murphy:

A  Yes, sir. I asked her, could she tell me where she got this? And she said no, and she acted surprised.

Q  At any time did you utter words of arrest to the defendant?

A  Yes, I did. I read her her rights and stated to her that she was under arrest for smuggling and possession of a controlled substance.

Q  After you read her her rights, were there any further conversations between you and the Defendant?

A  If there was, sir, it was general conversation; because she did not sign the waiver of her rights and I do not feel that I should go ahead and question this person further.

Q  Did you ask her to sign a waiver of her rights?

A  Yes, sir.

Q  What was said?

A  She said, no, she wanted to cooperate, but she did not quite understand it and she felt that she should be represented. She should know more. She felt that she should contact a lawyer, I believe she stated.

*Second Instance*—Inspector Murphy the witness (Tr 24, 25):

Prosecutor: Q  During that time was there any conversation?

Agent Murphy:

A  I had to, of course, fill out a form. And during the waiting period I asked her her name, and birthdate and place of birth. This type of questioning. That was most of my conversation with her, other than I am sure we did have some general conversation to kill the time, you might say.

Q  But the Defendant offered no explanation or statement as to your findings; is that your testimony?

Defense Counsel:

Objection, your Honor. That is an improper question.

The Court:  Sustained.

Prosecution: Q  At what time did you last see the Defendant on the date in question?

A  What time, sir?

Q  Yes. You stated that you were present when the Drug Enforcement Administration officers arrived. Did there come a time when you left the presence of the Defendant?

A  Yes. She left my presence first and then she came back and then she left again with the DEA officers. And I assume it was forty-five minutes that had elapsed.

Q  During this period there was no conversation between you and the defendant other than the time of day?

A  Well there was general conversation when we were discussing the signing of the waiver when she had intimated that there was something that

she would like to tell us. But she did not think like she should, that she had to think of herself.

Q  That she had to think of herself?

A  Yes, sir. And she felt that she should consult someone else.

*Third Instance*—Special Agent Baumwald the witness (Tr 39, 40):

Prosecutor: Q  After you spoke to Miss Levy did you have another conversation with the Defendant?

Agent Baumwald:

A  Yes, sir.

Q  What did she say at that time?

A  She told me that she had a logical explanation as to how the cocaine entered her suitcase, but she could not tell me at that time what that explanation was. She also told me that she had known Miss Levy prior to leaving Miami rather than what she told me originally about meeting her on the trip to Panama. That they had traveled together to Panama.

Q  Did you have any further conversation with the Defendant?

A  She insisted that she would want to speak to her lawyer before she talked to us any further. So we did not question her any further.

Q  Did she at any time offer to tell you this logical explanation?

A  No, sir. She said she had to speak with her attorney before she could do that.

*Fourth Instance*—Special Agent Baumwald the witness (Tr 42):

Prosecutor: Q  Did you and the Defendant have any other conversation on February 4, 1976?

Agent Baumwald:

A  Nothing specific; just we had asked her for background information and we filled out our paperwork.

Q  Did you at any time state to the Defendant that it would be to her advantage to cooperate with the Government?

A  I asked her if there was anybody else involved with this transaction; and

that it would be to her advantage to tell us so that we would know the story and possibly go further with the investigation.

Q What was her response?

A She refused.

Defense Counsel: Your Honor, again I am going to move to strike. If I may approach the bench with counsel.

. . . . .

Prosecutor: Special Agent Baumwald, after the Defendant was advised of her rights, did she make any further statements to you?

Agent Baumwald: She just told me that she was not aware that there was cocaine inside the bag (Tr 45).[1] During this fourth statement, Johnson's counsel objected and moved for a mistrial.[2] The Court denied the motion, but instructed the jury to disregard the last mentioned testimony.

The parties ask us to determine whether the admission of this testimony infringed impermissibly on defendant's right to remain silent under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as applied by *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). We hold that the testimony did infringe on those rights and that the admission of this evidence constituted prejudicial error.

■ *Doyle* elevated to constitutional status the rule enunciated in *Hale,* that the prosecution may not impeach a defendant's testimony with evidence of the defendant's silence after having received *Miranda* warnings. This rule includes a ban on the use of defendant's expressions of intent to remain silent. *See United States v. Stevens,* 538 F.2d 1203, 1205 (5 Cir. 1976). Where a defendant's post-*Miranda* utterance is an ambiguous expression of his desire to remain silent, that utterance should receive the same treatment as naked silence. *Stevens, supra. Cf. United States v. Joyner,* 539 F.2d 1162, 1165–66 (8 Cir. 1976).

These rules seem fairly well defined. Our case, however, does not fit directly into any of the situations on which courts have previously rendered decision. Here, the defendant made some expressions of an intent to remain silent until after consulting an attorney. She also stated, in conjunction with that desire to remain silent, that she wanted to cooperate, and that she had a logical explanation for the presence of the cocaine found in her suitcase.

We are of the opinion that the expressed desire to consult an attorney before explaining anything to customs officials is, purely and simply, an expressed desire to remain silent. To treat this utterance otherwise would, under the logic of *Doyle* and *Hale,* improperly subject the defendant to penalty for exercising the right not to speak and the right to have an attorney present.

In each of the first three instances of challenged testimony, however, the expression of a desire to remain silent was coupled with other words indicating something else—a desire to cooperate or to tell the customs officials something, and an asser-

---

1. Unfortunately, the government's brief was based on an erroneous transcript of testimony, which has since been corrected. In the erroneous transcript, Special Agent Baumwald was quoted as saying that the defendant stated that she *was* aware of the presence of the cocaine in her suitcase. The government's brief made much of this statement and, in light of the discovery of the error, we have disregarded the portions of the government's argument that appeared to rely on the error. We have, however, given full consideration to the government's arguments that have a basis in the correct and corrected record. This minor problem, we believe, has not caused any lasting confusion as to the government's position before us.

2. The objection stated:

This is the second witness who has in effect been commenting on the Defendant's refusal to cooperate and refusal to testify. It has been firmly stated that she asked for the privilege of consulting with counsel. Now this is the second time that we are going into this failure to respond, what she said or didn't say, and I think it is totally in violation of her rights.

Tr. at 43.

tion that she had an explanation. We feel that in each instance the desire to remain silent was so tightly intertwined with the other utterance that the two portions must be considered as a whole—a single testimonial entity. Any other rule would be highly artificial and would present grave practical difficulties for prosecutors in dealing with similar statements.[3]

So viewed, the ultimate question arising here is whether the expressions of a desire to cooperate or an explanation are sufficient to transform the challenged testimony into statements made in waiver of *Miranda* rights. Our analysis perforce resorts to the Supreme Court's reasoning in *Hale* as adopted by *Doyle,* focusing on the "insoluble ambiguity" of post-*Miranda* silence.

While defendant on appeal challenges four instances of testimony, there was insufficient objection at trial to preserve error as to the first three of these instances.[4] Accordingly, we review those challenges to determine only whether the introduction of the evidence was plain error resulting in a miscarriage of justice. As to the fourth, though, the trial objection was sufficient for us to proceed on a normal standard of review.

■ The first three challenges take bead on the admission of testimony that defendant stated: (1) that she wanted to cooperate with the officials but did not understand the waiver form and felt that she should first contact a lawyer; (2) that she intimated that she wanted to tell something to the officials but that she did not think she should because she had to think of herself; and (3) that she said she had a logical explanation as to how the cocaine

entered the suitcase but could not tell the officials at that time, since she wanted to talk to her lawyer before speaking further. We consider these three challenges together because they present similar factual problems. They also proceed together under the plain error standard of review.

Initially, we note that none of the utterances can be read fairly to present a clear waiver of *Miranda* rights. We can see only one reason for the prosecution's introduction of the evidence in question; it was an attempt to rebut the defense of no knowledge by showing that defendant did not rely on that defense immediately upon her arrest. We concentrate our examination on the probative ambiguity of the statements, to determine whether they present the type of ambiguity noted in *Doyle.* There, the Supreme Court stated:

> Silence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.

Each of the challenged statements presents such an ambiguity. The statements are as consistent with maintaining silence as they are with prior knowledge of the presence of the cocaine. Indeed, a politely expressed desire to remain silent may reflect defendant's caution in the face of an intimidating and inherently coercive situation.[5]

---

**3.** We do not here encounter statements that are clearly inculpatory (or clearly exculpatory), and we do not decide whether it would be appropriate to consider as a unit a defendant's post-*Miranda* expression of a desire to remain silent coupled with an inculpatory or exculpatory statement.

**4.** *See* Note 1 *supra.*

**5.** Compare *United States v. Joyner,* 539 F.2d 1162 (8 Cir. 1976). There, after receiving *Miranda* warnings, the defendant stated to officers that he had, in storage, the truck for which

they were searching, but refused to reveal its location. This entire statement was introduced at trial, and defendant objected on grounds similar to those before us. The Eighth Circuit held that the evidence was properly admitted:

> The record as to this issue clearly demonstrates that Joyner was not asserting his right to remain silent when he stated to the FBI agents at the interviews that he would not tell them where the truck was being kept. Joyner was apprised of his *Miranda* rights and responded that he understood them. With that knowledge he chose to answer

This testimony went to the heart of the sole defense, encouraging the jury to believe that the defense was fabricated after arrest, though this evidence cannot unambiguously indicate such tardy ingenuity. The question—knowledge—is peculiarly immune from substantial direct proof. Here, we face (a) testimony that defendant appeared surprised upon learning of the presence of the cocaine, (b) the challenged testimony, (c) defendant's immediately subsequent denial of knowledge of the cocaine, and (d) testimony that defendant had bought the suitcase in a Miami flea market about a week prior to her trip to Panama, and kept the suitcase by her bed while in Panama. This state of evidence makes it likely that defendant's expressed desire to remain silent tipped the scales for the jury. In light of *Doyle,* the introduction of this challenged testimony was plain error. We can come to no other conclusion based on analysis and common sense. Implicit in this determination is the conclusion that the error was prejudicial rather than harmless.

Our conclusion is reinforced by reflection on the rule, expressed in *United States v. Blair,* 470 F.2d 331 (5 Cir. 1972), *cert. denied sub nom. Crews v. United States,* 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973), prohibiting continued questioning after an arrestee has indicated his desire to remain silent until he had an opportunity to consult an attorney. The questioning of defendant here failed to comport with that rule, and two of these challenged utterances were made after the officers' continued questioning. While we do not here hold that the utterances constituted coerced confessions, we note the presence of illicit pressure and we express our concern that the pressure necessitated defendant's repeated assertions that she did not wish to talk to the officers without consulting her attorney.

■ The fourth instance of challenged testimony is of a different species. This is testimony as to refusal to cooperate with officials in their attempt to learn the identities of other persons involved in the transaction. This refusal unquestionably implicates the defendant's right not to incriminate herself, for if she were to reveal names of other persons involved in the cocaine deal, she would be admitting prior knowledge of the presence of the cocaine. As matters stood in fact, however, her failure to accept the officers' invitation to talk does not point only to a desire to protect others or to protect herself. It also points to a lack of knowledge of anything about the cocaine, and perhaps also reflects a reaction to the unfamiliar detention atmosphere, protected by the Fifth Amendment. We cannot say that this evidence goes to prove anything other than defendant's silence. The prejudice here, however, cannot pass unnoticed.

Furthermore, it appears to us that in the circumstances of this case, the defendant suffered injury because of this error. We cannot say beyond a reasonable doubt that the jury would have convicted defendant in the absence of the erroneously admitted evidence.

Though the trial court instructed the jury not to consider that remark, the testimony was so prejudicial that a simple instruction cannot cure it. Such is the law on these matters in the Fifth Circuit after *Doyle. See United States v. Stevens,* 538 F.2d 1203 (5 Cir. 1976); *United States v. Harp,* 536 F.2d 601 (5 Cir. 1976).

On the basis of harmful errors uncovered by our examination of the challenged testi-

---

questions. He admitted that he had the tractor stored in the Gary, Indiana area and that it was accruing storage charges. His statement that he would not reveal the exact location of the truck was a direct answer freely given, not an ambiguous assertion of his right to remain silent.

In our case, we face an entirely different situation. First, Joyner's statements seem separable; our defendant's are not. Second, none of our defendant's utterances were "direct answer[s] freely given." Finally, Joyner's statement about having the truck was plainly inculpatory; we face no such statements here.

mony, the judgment of conviction is REVERSED and the case REMANDED for a new trial.