**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Paul EDWARDS,
Defendant-Appellant.**

No. 77–5583.

United States Court of Appeals,
Fifth Circuit.

July 21, 1978.

Lucien B. Campbell, Federal Public Defender, C. Larry Mathews, Jr., Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., Frank Walker, Asst. U. S. Atty., El Paso, Tex., James E. Bock, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, GEE and RUBIN, Circuit Judges.

PER CURIAM:

On May 2, 1977, defendant Edwards rented an automobile from a Hertz office in Atlanta. He used the name of Charles Townsend, an acquaintance, and rented the car with an American Express card issued to Townsend. Though Edwards had previously visited Townsend in Oklahoma, Townsend testified that he had not given the driver's license or credit card to Edwards.

On June 1, 1977, Edwards returned from Mexico at El Paso when he was stopped by a border guard. At first he claimed to be Townsend but later he admitted his real identity. The defendant, his three fellow passengers and the car were searched. The guard found the Hertz rental agreement in the glove compartment and Edwards' real driver's license in the boot of one of the passengers.

Defendant was tried and convicted below for violation of the Dyer Act, 18 U.S.C. § 2312 (interstate transportation of stolen vehicle). He appeals.

*The Comment on Edwards' Silence.*

In his closing argument the prosecutor stated:

But look, the point is, ladies and gentlemen, when he did finally fess up to the fact that he was the man in this driver's license here, did he even tell them hey—when they also found Government's Exhibit No. 1 [the rental contract] in his glove compartment, did he say, "Hey, wait a minute, let me tell you what the story is. I got this car a month ago over in Atlanta, Ga. I've been down visiting relatives . . . ." or whatever reasonable explanation he might have, did he give it to them? No way. Not to this good day. No way. Remember that ladies and gentlemen, there was no reasonable explanation given.

At this point defense counsel objected to the prosecutor's statement on the ground that it was a reference to Edwards' failure to testify—not that it was a reference to defendant's silence at arrest. The judge immediately instructed the jury that defendant was under no obligation to testify.

■ Were these statements by the prosecutor a reference to defendant's silence? A comment is deemed to be such a reference if either (1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would "naturally and necessarily" take it to be a comment on defendant's silence. See United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir. 1977).

■ Despite the apparent sense of the prosecutor's statements, the government contends that they were not a reference to Edwards' silence but rather a permissible reference to the standard presumption, indulged in in Dyer Act cases, that in the absence of some reasonable explanation a jury may infer knowledge that a vehicle was stolen from the fact that defendant was found in possession of it shortly after the time it was, in fact, stolen. We have construed comments on the absence of a reasonable explanation in this manner, e. g., United States v. Ward, 552 F.2d 1080 (5th Cir. 1977), but we think the contention somewhat far-fetched when made on the facts of this case. Defendant's knowledge that the car was stolen was not at issue in the trial. The evidence showed conclusively that he had "rented" the car and been in continuous possession of it. Whatever the facts about its "stolenness" might be, it was undisputed that Edwards knew them; he was their architect. There was no occasion to draw inferences from Edwards' mere possession of "stolen" property. Once the factfinder concluded the car was stolen its inquiry, on these facts, was at an end. Edwards was the thief. Given these circumstances and the content of the remarks themselves, then, we think it fairly clear that the prosecutor meant his comments as remarks on defendant's silence upon arrest and perhaps also on his failure to take the stand. ("Not to this good day"). At all events, it seems the jury would "naturally and necessarily" so interpret them.

■ With limited exceptions not applicable here, it is the rule that a prosecutor may not comment on a defendant's silence at arrest. See Miranda v. Arizona, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Henderson, 565 F.2d 900 (5th Cir. 1978). Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), prohibits the use of such evidence even to impeach a defendant's testimony at trial. Such comments may constitute plain error, United States v. Henderson, supra at 905, and a judge's cautionary instruction will not suffice to cure the error. United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); United States v. Henderson, supra. Thus, defendant's failure to object on these grounds does not preclude review. Moreover, most of these observations apply equally to comments on the defendant's failure to take the stand, and defendant raised a timely objection on this ground.

■ Even though it appears that the defendant's constitutional rights were violated by the prosecutor's comments on his silence at arrest and his failure to testify, such violations need not lead to reversal if harmless beyond a reasonable doubt. Chapman v. United States, 547 F.2d 1240 (5th Cir.), cert. denied, 431 U.S. 908, 97 S.Ct.

1705, 52 L.Ed.2d 393 (1977). The prosecutor's comments, insofar as they went to defendant's silence on arrest, arose in an unusual setting. Usually such comments come where defendant has given an exculpatory story at trial and the prosecutor seeks to raise doubts about its veracity by suggesting that if it were true defendant would have told it to the police upon his arrest. Here Edwards did not take the stand. The story that the prosecutor suggests defendant might have given the border guard,—that he had rented the car, etc.—is exactly what the prosecutor's evidence at trial proved had occurred, i. e., that defendant had rented the car with Townsend's identification and credit card. But the prosecutor's further comment that no reasonable explanation was given suggests that if defendant had an exculpatory story to tell he would have given it to the border guard. His further arguable comment that defendant had not testified at trial, the "not to this very day" remark, suggests that defendant's failure to testify meant he had no exculpatory story to give. Thus, the comments, taken as a whole, were undoubtedly prejudicial. Whether they were so prejudicial as to make the "harmless error" doctrine inapplicable depends on the strength of the evidence against defendant. To this we now turn.

*Sufficiency of the Evidence.*

■ Edwards contends that the car was not really stolen because Hertz had not been deprived of any of the beneficial uses of ownership. In support of this contention, he argues, and the record shows, that Hertz had not reported the car as stolen when he was arrested and that Hertz did not consider the car to be stolen, merely overdue. However, since the question is not how Hertz viewed the matter, but whether Edwards exceeded the scope of the rental agreement, this contention is meritless. *See United States v. Richards,* 425 F.2d 432 (5th Cir. 1970). Similarly, his exceeding the scope of the rental agreement would support a jury finding that he intended to steal the car. *See United States v. Wilson,* 488 F.2d 688 (5th Cir. 1973).

Defendant also argues that there was no direct evidence that the rental price for the full time defendant had the car had not been paid. The government does not strenuously contend otherwise but suggests that Townsend's testimony that he would have paid the bill had defendant asked him to is sufficient to support an inference that the bill had in fact not been paid. We think it more properly supports an inference that Townsend had not paid it and little if anything further. Defendant's third contention is that there was no conclusive evidence that the rental contract, which expired 23 days before defendant's arrest, had not been extended by agreement of defendant and Hertz. A Hertz employee testified that the contract bore no notation to indicate that it had been extended but that it was possible that defendant had called in on a weekend to extend the contract. If defendant had done so, no notation of the extension would have been made on the contract because on weekends Hertz personnel do not have access to the contracts. These latter contentions would require the government to prove a negative and any doubt which they raised might properly have been seen by the jury as not reasonable.

■ In sum, although the evidence is somewhat thin, it is sufficient to support the conviction. However, the weakness of the evidence makes it impossible to view the prosecutor's comments on Edwards' silence as harmless error, as we might do were the evidence stronger. The prosecutor by his comments brought the defendant's silence upon arrest and at trial to the attention of the jury, apparently intending to shore up his less-than-overwhelming evidence by leading the jury to make inferences of guilt from defendant's silence. We must therefore reverse. In so doing we note that the comment upon silence of the accused is a crooked knife and one likely to turn in the prosecutor's hand. The circumstances under which it will not occasion a reversal are few and discrete. We suggest that it be abandoned as a prosecutorial technique.

REVERSED AND REMANDED.