**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James T. SMITH, Defendant–Appellant.**

**No. 80–5138
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 26, 1981.

Michael S. Tarre, Miami, Fla., for defendant–appellant.

Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff–appellee.

Before HILL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant James T. Smith was convicted of conspiracy to possess with intent to distribute quantities of methaqualone pills in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1972); possession with intent to distribute methaqualone pills in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2 (West 1969); the distribution of methaqualone pills in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2 (West 1969); and the use of a communication facility (a telephone) on February 14, 1979, in the commission of a felony under the Comprehensive Drug Abuse Prevention and Control Act of 1970, in violation of 21 U.S.C.A. § 843(b) (West 1972).[1] The single issue we must determine on appeal is whether harmless error occurred when a government witness spontaneously volunteered a statement which could be construed as a remark on appellant Smith's silence after arrest. Finding any error to be harmless beyond reasonable doubt, we affirm.

### FACTS

On February 1, 1979, Drug Enforcement Administration (DEA) agents James Peacher and Vincent Mazzilli met appellant James T. Smith at an apartment in Fort Lauderdale, Florida. At that meeting, the agents and Smith discussed the purchase of 100,000 methaqualone pills by the agents, the method of delivery and payment. Smith assured the agents that he had a source that had access to sufficient pills to meet the agents' needs. Before the meeting ended, agent Peacher and Smith exchanged telephone numbers.

On February 8, 1979, Agent Peacher made a telephone call to Smith regarding the sale of the methaqualone pills. This conversation was recorded by Agent Peacher and was admitted into evidence.

In accordance with the February 8 phone call, appellant Smith and his co–defendant,

---

**1.** Appellant Smith was tried with a co–defendant, Gary "Bucky" Sanders. Sanders was acquitted of all charges against him.

Gary "Bucky" Sanders, met with Agent Peacher at the Big Daddy's Lounge in North Miami, Florida. At the meeting, Smith introduced Sanders as his partner. Smith then left the bar to call his source to see if the pills were available. After the call, it was agreed that Peacher would buy 1,000 pills as a sample, and "Bucky" would hold the money ($2,350) while Smith got the pills from his source. Smith returned within thirty minutes and delivered approximately 1,000 methaqualone pills to Peacher in a plastic bag in the parking lot of Big Daddy's Lounge. Smith then told Agent Peacher to get to his people "as soon as possible" so that they could consummate the other deal for 100,000 pills.

On February 14, 1979, Peacher called Smith regarding the sale of the 100,000 methaqualone pills. This conversation also was recorded by Agent Peacher and was introduced into evidence. On February 16, Peacher, Mazzilli and another agent went to the Dupont Plaza Hotel in Miami, Florida to effectuate the proposed sale. They met Smith in front of the hotel and walked to a recreational vehicle in a parking lot next to the hotel. Once inside the vehicle, appellant Smith introduced the agents to a man named "Bill," whom he characterized as his connection and partner. After introductions were complete, the agents produced a briefcase with $210,000 in cash. "Bill" and Smith counted the money. Then "Bill" left to make a phone call to the alleged source of the pills while Smith discussed with Mazzilli and Peacher the details of exchanging the pills for money. After waiting over an hour for the delivery, the agents left without the methaqualone pills. Appellant Smith later that day telephoned Agent Peacher, telling him that the person with the pills had driven through the parking lot, had seen Mazzilli, and had thought "he had recognized him to be a police officer."

## IMPROPER COMMENT ON SMITH'S SILENCE

Appellant Smith and Gary "Bucky" Sanders were tried together. The government called three witnesses to prove its case—Agents Peacher and Mazzilli and William Beazley, a DEA chemist. The testimony of Peacher and Mazzilli was consistent, with a few minor exceptions, and was the story recounted above. Neither appellant Smith nor Sanders took the stand or offered any evidence in their defense.

During a heated cross examination of Mazzilli by Sanders' counsel, the following exchange took place:

Q. [By Mr. Williams, counsel for Sanders] Because of the position that he had relative to Smith, it appeared that Bill's position in the hierarchy was higher than Smith's, did it not?

A. [By Mr. Mazzilli] Yes. With my experience, I can tell you it was probably a notch higher than Smith.

Q. *Have you ever arrested Bill yet?*

A. *If Mr. Smith would tell me who he is.*

Mr. McWilliams [counsel for Smith]: Objection: I move for a mistrial. (Emphasis added)

After the jury was excused from the courtroom, the court denied Smith's motion for a mistrial, holding that any error could be made harmless by a curative instruction. When the jury returned to the courtroom, the court instructed the jury that the last response by Agent Mazzilli was inappropriate, improper and should not have been given. The court then polled each of the jurors to determine whether they could disregard the last answer of Mazzilli. Each juror responded in the affirmative.[2]

---

2. The curative instruction by the court and the poll was as follows:

THE COURT: Ladies and Gentlemen of the jury, just before you had retired to the jury room, a question was asked of the witness and the witness responded in an unresponsive type manner. The answer that he gave to that question was inappropriate, improper and should not have been given.

It is very important now that I ask you to use what I guess we can call, in layman's terms, a mental eraser. I want each of you to search your conscience and if you cannot disregard that answer completely, let me know, because it is very vital to seeing that justice is done in this case. I will go right down the line and ask each of you if you can disregard that (TR 292).

The government does not contest[3] that the remark made by Agent Mazzilli was an improper comment on appellant Smith's silence in derogation to his *Miranda* and Fourteenth Amendment due process rights.[4] Accordingly, we turn immediately to whether Mazzilli's remark is harmless.

In *Chapman v. United States*, 547 F.2d 1240 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), this circuit held that the harmless error doctrine is applicable to the type of constitutional violation at issue here. 547 F.2d at 1248. Therefore, we must determine whether the violation in the case at bar was harmless beyond a reasonable doubt. The indicia established by this court indicates that without doubt the prejudice suffered by appellant Smith here was almost nil.

As in *United States v. Sklaroff*, 552 F.2d 1156 (5th Cir. 1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978) and in *United States v. Whitaker*, 592 F.2d 826 (5th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979), the prosecution did not elicit the response but instead the improper remark was a spontaneous comment by the witness. *Compare United States v. Johnson*, 558 F.2d 1225 (5th Cir. 1977); *United States v. Stevens*, 538 F.2d 1203 (5th Cir. 1976); and *United States v. Impson*, 531 F.2d 274 (5th Cir. 1976) (all cases involving an improper comment by a witness prompted by a prosecutor.)

In the case at bar, the remark by Agent Mazzilli was the only comment on the defendant's silence. The prosecutor did not "focus on" or "highlight" the defendant's silence in his examination of the witnesses or in his closing remarks. *United States v. Espinosa–Cerpa*, 630 F.2d 328 (5th Cir., 1980); *United States v. Sklaroff supra; Chapman v. United States, supra; United States v. Davis*, 546 F.2d 583 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). Mazzilli's comment in no way undermined any exculpatory defense offered by appellant Smith, as appellant Smith offered no defense. *United States v. Espinosa–Cerpa*, 630 F.2d at 333, *United States v. Sklaroff*, 552 F.2d at 1162. *Compare United States v. Impson, supra*, (concern that comment on defendant's si-

---

It is noteworthy that the court did not describe or restate the objectionable testimony, but described the testimony as a response to a question asked just "before you had retired to the jury room." The record makes clear that the only objection just before the jury retired from the courtroom concerned Mazzilli's response, and therefore we believe the court's curative instruction was clear. Insofar as any juror had forgotten Mazzilli's response just before the jury retired from the courtroom, our finding of harmless error is bolstered.

3. Because of the government's concession, we assume without deciding that the remark was an improper comment on appellant's silence. *See United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978) and *United States v. Johnson*, 558 F.2d 1225 (5th Cir. 1977).

4. *Miranda v. Arizona*, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 1624 n.37, 16 L.E.2d 694 (1966) (prosecution may not use defendant's silence at trial); *United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978) (closing argument by prosecutor referring to defendant's silence after arrest improper); *Chapman v. United States*, 547 F.2d 1240 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (question by prosecutor eliciting remark concerning defendant's silence after arrest improper); *Compare*

*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (reference to defendant's silence in cross-examination for impeachment purposes violates due process).

*United States v. Edwards, supra*, noted that a comment is deemed to be a reference to the defendant's silence if "either (1) it was the prosecutor's manifest intention to refer to the defendant's silence, or (2) the remark was of such a character that the jury would 'naturally and necessarily' take it to be a comment on defendant's silence." 576 F.2d at 1154.

This court has also noted that the identity of the person making the improper comment regarding a defendant's silence is not dispositive of the due process issue, but rather it is the effect of the comment on the jury. *United States v. Kaplan*, 576 F.2d 598, 600 (5th Cir. 1978), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979) (co–defendant called as a witness by a defendant who knew the co–defendant would refuse to testify). *See also De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962) and *United States v. Aguiar*, 610 F.2d 1296, 1302 (5th Cir.), *cert. denied sub nom., Morejon–Pacheco v. United States*, —— U.S. ——, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980) (counsel for co–defendant commenting on defendant's failure to testify).

lence may have been a determining factor in jury disbelieving a plausible defense by defendant); *United States v. Johnson, supra,* (concern that comment on defendant's silence may have caused the jury to disbelieve defendant's defense of no knowledge she was carrying drugs in her suitcase); *United States v. Harp,* 536 F.2d 601 (5th Cir. 1976) (comments on defendant's silence that "struck at the jugular" of the defendant's defense constituted reversible error).

Because of the court's curative instruction and the poll of the jurors, and in light of the otherwise overwhelming evidence of guilt deriving from appellant's sale of approximately 1,000 methaqualone pills, we are compelled to conclude that the error was harmless. *United States v. Espinosa-Cerpa,* 630 F.2d at 333; *United States v. Whitaker,* 592 F.2d at 831; *United States v. Chapman,* 547 F.2d at 1249; and *United States v. Davis,* 546 F.2d at 595.

Accordingly, we affirm appellant Smith's conviction.

AFFIRMED.