**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold Wayne MASON, Defendant-Appellant.**

**No. 81–2101**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1981.

Rehearing and Rehearing En Banc Denied Jan. 4, 1982.

---

Karen K. Brown, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Harold Wayne Mason, indicted with three others, was convicted by jury of conspiracy to possess and pass counterfeit currency in violation of 18 U.S.C. §§ 371, 472 and 473, and passing counterfeit notes in violation of 18 U.S.C. § 473. He was sentenced to five and ten year concurrent terms, execution was suspended, and Mason was placed on supervised probation for five years. On appeal Mason asserts that his warrantless arrest at his home violated the fourth amendment and that comments by co-defendant's counsel infringed his fifth amendment right to decline to testify. Finding no merit in the former claim and harmless error as to the latter, we affirm.

### Facts

Mason's common-law wife or paramour, Lois Ann Mitchell (a/k/a Lois Boutte), attempted to purchase a $3.18 ring with a counterfeit $100 bill at a Houston department store. Store personnel detained Mitchell and notified the United States Secret Service. The agent sent to investigate examined the bill and briefly interviewed Mitchell at the store. Mitchell first explained that she had received the bill when she cashed a check. She then retracted this statement, stating that Mason had given her the bogus note and he had four others at the house they lived in. She admitted knowledge that the bills were counterfeit.

At the store, the agent advised Mitchell of her rights and repeated the advice after taking her to the Secret Service office for further questioning. During the examination, Mitchell recanted her prior statement in part, admitted she had the other four counterfeit bills, and handed them to the agent. She again identified Mason as the source and added that she did not know whether he had more counterfeit currency.

After consultation with an assistant United States Attorney, the agent formally placed Mitchell under arrest. Accompanied by three colleagues, the agent then took Mitchell to the house where she and Mason were living. The agents had neither an arrest or search warrant. The agent ex-

plained their failure to secure a warrant by noting their concern that if Mason learned of Mitchell's arrest, any other counterfeit bills might be destroyed before they could be seized.

Mason came to the front door as Mitchell and the agents approached the house. The lead agent identified himself, placed Mason under arrest for passing counterfeit currency, and requested permission to search the house. Mason first denied ever possessing the bills, then admitted a friend had given them to him, said he had no others and consented to a search. The search disclosed no contraband. Mason and Mitchell were escorted to the Secret Service office. There Mason revealed that he had received the bills from "Pee Wee" Gurode and agreed to place telephone calls to Gurode and permit the agents to tape their converstions. These tapes were admitted into evidence.

Mason's motions to suppress all evidence obtained as a result of the warrantless arrest and search were denied. This grounds the fourth amendment claim. Mason also complains that comments by counsel for co-defendant Gurode violated his fifth amendment right to remain silent.

### Fourth Amendment

■ Mason was arrested at the door of his home. The Supreme Court found such a warrantless arrest consistent with the fourth amendment in *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). The Court reasoned that the defendant in *Santana* was, under *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), in a public place and had no protectible expectation of privacy.

Mason maintains that *Santana* is not dispositive because the agents created the occasion for him to come to the door by approaching the house with Mitchell, and cites *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), to support his position. Vale was arrested as he started up the front steps to his house. The officers had observed what they believed to be a narcotics transaction, involving Vale, at a car parked on the street in front of his house. The officers then searched the house without a warrant. Finding neither consent, emergency, hot pursuit, imminent destruction or removal of evidence, the Supreme Court held the search unconstitutional. The Court held that the agents could not create exigent circumstances by the arrest.

*Vale* is inapposite; *Santana* controls. The agents did not seek to create exigent circumstances either for the warrantless arrest or warrantless search. Mason was permissibly arrested at the front door. Examining the validity of the search is an exercise of little value for nothing was found; accordingly, there is no poisonous fruit to be suppressed.

### Fifth Amendment

■ Mason contends that the comments by counsel for his co-defendant, relating to his failure to testify, constitutes reversible error under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Co-defendant's counsel stated:

> ... [T]here is no evidence against Mr. Gurode. You have got to remember that and it's hard. But you will see that there are six overt acts naming dates, times, places, people. And the only place where that evidence came from, those statements came from, were these statements made by these people and they can't be used against Mr. Gurode.
>
> I didn't have a chance to ask them on the stand, are you sure it was Mr. Gurode? Are you sure it happened at that time? Who else was with you? How can you prove it? What do you mean?

The government does not deny that these comments were improper, it contends that they constitute harmless error.[1] *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

---

1. Because the government does not contest whether the comments rise to the level of constitutional error, we will assume without deciding that the remarks were improper. *See United States v. Smith*, 635 F.2d 411, 413 n.3 (5th Cir. 1981) (*citing United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978) and *United States v. Johnson*, 558 F.2d 1225 (5th Cir. 1977)).

In *United States v. Macker*, 608 F.2d 223 (5th Cir. 1979), we held that before a comment on the failure to testify will constitute reversible error, it must be shown that it was the attorney's manifest intention to refer to the silence of the defendant, or the remark must be of such a character that the jury would naturally take it to be a comment on the failure of the accused to testify. In *Macker*, the defendant's name was never mentioned, the statements were unexceptional, lacking in emphasis and cured by an instruction. We considered the comments to be harmless error. *See also Chapman v. United States*, 547 F.2d 1240 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). In the instant case, the statements made by co-defendant's counsel did not single out Mason for his failure to testify. The remarks referred to the other three defendants collectively. No immediate jury admonition was sought. The court later charged the jury that "no inference whatever may be drawn from the election of a defendant not to testify." The evidence of Mason's participation in the offenses was overwhelming—he confessed to receiving the money and participated in obtaining evidence against his co-conspirators. *See United States v. Staller*, 616 F.2d 1284 (5th Cir. 1980), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1981). Viewing the totality of the circumstances reflected in the record as a whole, we conclude that any error inherent in these comments is manifestly harmless error.

The district court is AFFIRMED.