UNITED STATES of America,
Plaintiff–Appellee,

v.

John Valdez MARTINEZ a/k/a Antonio Stefano, a/k/a Johnny Martinez, a/k/a Johnny Valdez Martinez, a/k/a Tony Stefano, a/k/a Johnny V. Martinez, a/k/a Johnny Martin, a/k/a Juan Valdez Martinez and Paula Fowler Bushon, Defendants–Appellants.

No. 88–5636.

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1990.

Nancy B. Barohn, San Antonio, Tex. (Court-appointed), for Martinez.

Peter Koelling, San Antonio, Tex. (Court-appointed), for Bushon.

Sara Criscitelli, Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for U.S.

Before THORNBERRY, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

After a jury trial, John Valdez Martinez ("Martinez") and Paula Fowler Bushon ("Bushon") were convicted of conspiracy to make and sell false documents of citizenship, in violation of 18 U.S.C. § 371 (Count One). They were also convicted of two counts of falsely making and selling documentary evidence of citizenship in violation of 18 U.S.C. § 1426 (Counts Two and Three). Martinez was sentenced to consecutive terms of four years' imprisonment on Counts One and Two, and to four years' imprisonment on Count Three to be served concurrently with the sentence on Count Two. Bushon was sentenced to concurrent terms of two years' imprisonment on each count. On this appeal, Martinez and Bushon raise several points of error. This Court affirms.

I. FACTS AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to the Government, pursuant to *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942), the facts of the case are as follows. A professional informant, Tony Villarreal ("Villarreal"), told Texas police officers of an existing plan by other parties to sell forged citizenship documents in February of 1987. The police passed this information on to agents of the Immigration and Naturalization Service ("INS"), who arranged to have an undercover agent introduced to the suspected sellers of false and forged citizen-

ship documents. Accordingly, on February 25, 1987, Villarreal phoned Joseph Robledo ("Robledo")[1] and ordered several false documents to be made in the name of "Roberto." In reality, the false documents were for Gilbert Wise, an INS undercover agent. Villarreal gave the names, dates of birth, and other such information to be contained in the documents to Robledo. This and other telephone conversations were taped. That afternoon, Villarreal and Agent Wise met with Robledo in a parking lot. This meeting was videotaped by a surveilling INS agent and recorded by Villarreal, who carried a micro-recorder. At this meeting Robledo gave three documents to Villarreal and Wise: a Texas birth certificate in the name of "Rene David Hernandez," a baptism certificate in the same name, and a Texas marriage license in the names of "Rene David Hernandez" and "Rachel Villarreal Ramos." Villarreal also requested a DD214 Army discharge form in that same conversation. Robledo apparently forgot the army discharge form and said he would arrange to get it to Villarreal that night or the next morning.

The next day, Villarreal complained to appellant Martinez, who was working with Robledo, because the bride's name was misspelled on the marriage license. The bride's name should have been spelled "Romo" and not "Ramos." Villarreal was also displeased with the quality of the paper on which the copies were made. In this recorded conversation, Martinez told Villarreal to bring the documents to appellant Bushon's residence where she would retype the name, and use better paper.

Villarreal went to Bushon's[2] residence, again equipped with a micro-recorder. Martinez was there as well and the three discussed the documents, as well as the types of documents they could prepare, if they had access to a computer and a better copying machine. Bushon was observed by surveilling INS agents leaving the residence and going to Kinko's Copy where she

---

[1]. Robledo was named in Count One of the indictment as a co-conspirator, but he was not tried with Bushon and Martinez.

[2]. It is not clear whether Bushon and Martinez shared the residence. However, the two were married.

made copies at a machine. Bushon then stopped off and bought some gold seals and returned to Bushon's residence.

Later that day Villarreal returned to Bushon's residence and recorded another conversation in which the three discussed obtaining a better typewriter and copier. They also discussed plans for copying other items such as security passes and concert tickets.

About two and a half weeks later, Villarreal arranged another meeting among the following four people: Agent Wise, yet another undercover INS agent, Martinez, and himself. This meeting was videotaped. At the meeting, the INS agents discussed with Martinez the possibility of ordering large numbers of false documents for a number of other people. They also discussed the price that Martinez would charge for the documents. The next day, Martinez gave the agents samples of his documents. This meeting was videotaped and audio-recorded.

Martinez and Bushon raise several arguments as to why their convictions should be set aside. We affirm.

## II. DISCUSSION

### A. *Sufficiency of the Indictment*

■ Martinez and Bushon maintain that Counts Two and Three of the indictment should have been dismissed because the counts failed to allege all of the essential elements of the offense under 18 U.S.C. § 1426(b). Counts Two and Three of the indictment alleged that Martinez and Bushon "did knowingly and intentionally sell as true and genuine documentary evidence of citizenship knowing the same to be false and forged, in violation of Title 18, United States Code, Section 1426." Record on Appeal, vol. 2, p. 408. Section 1426(b) provides that:

> Whoever utters, sells, disposes of or uses as true or genuine, any false, forged, altered, antedated or counterfeited oath, notice, affidavit, certificate of arrival, declaration of intention to become a citizen, certificate or documentary evidence of naturalization or citizenship, or any

order, record, signature or other instrument, paper or proceeding **required or authorized by any law relating to naturalization or citizenship** or registry of aliens, or any copy thereof, knowing the same to be false, forged, altered, antedated or counterfeited ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both. (emphasis added).

Martinez and Bushon argue that the indictment should have also contained the language highlighted above (the documents were "required or authorized by any law relating to naturalization or citizenship") because this phrase constitutes an essential element of the offense.

The argument of Martinez and Bushon is that the highlighted phrase specifically links the forged documents to the immigration laws. In other words, for there to be a violation of section 1426(b), the forged documents must be "required or authorized by any law relating to naturalization or citizenship." Martinez and Bushon maintain that this phrase must be included in the indictment in order for the indictment to adequately state the offense and thus give them notice. Martinez and Bushon state that certain forged documents were introduced in evidence the production of which does not meet the requirement of the highlighted phrase, such as a marriage certificate, a lease agreement, and a military discharge form. Martinez and Bushon argue that the production of these documents does not constitute an offense under section 1426(b). Further, that the jury could have believed that those documents did constitute such an offense due to the omission in the indictment of the highlighted phrase.

■ This Court determines that the better reading of the statute is that the phrase "required or authorized by any law relating to naturalization or citizenship," modifies the language immediately before it, "or any order, record, signature or other instrument, paper or proceeding." Thus the phrase omitted in the indictment is not an essential element of the offense of selling documentary evidence of citizenship.

We reach this conclusion based on the rule of the last antecedent, which provides that "qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to ... others more remote." *Quindlen v. Prudential Insurance Co.*, 482 F.2d 876, 878 (5th Cir.1973). Furthermore, the statute would be redundant if the phrase were to modify "documentary evidence of naturalization or citizenship," because this category implicitly relates the offense to the immigration laws. This Court determines that the indictment was not ambiguous, and was sufficient to allege an offense under the statute. The indictment stated the requisite state of mind as well as the violative act.

■ The marriage certificate, lease agreement, and military discharge form were not inadmissible; these documents were admissible under Federal Rule of Evidence, Rule 404(b) "as proof of motive, ... intent, preparation, plan, [or] knowledge."

B. *Admission of the Tape Recordings*

■ Appellant Bushon contends that the taping of the conversations between herself, Martinez, and Villarreal in her home violated her fourth amendment rights. Bushon argues that the taping constituted a fourth amendment violation because she was not aware of the fact that Villarreal was a government agent, and the taping was done without a warrant having been obtained.[3] The Supreme Court has stated that

> however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to 'a wrongdoer's misplaced belief that a per-

son to whom he voluntarily confides his wrongdoing will not reveal it.'

*United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971) (White, J.), *quoting Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). Bushon acknowledges that Villarreal could have testified as to the contents of the conversations which took place in her home, but Bushon challenges the surreptitious taping of these conversations. The above quoted passage, however, applies to taped conversations as well. *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). In the present case, Bushon consented to the presence of Villarreal in her home, and carried on consensual conversations with him; Villarreal, of course, consented to the recording of his conversations. The district court did not err in allowing these tape recordings to be admitted into evidence.

C. *Entrapment*

The statement of facts in the briefs of both Martinez and Bushon state that several months before the INS investigation began, Villarreal contacted Martinez and Bushon because they operated a prisoners' rights organization. They assert that Villarreal was seeking assistance from them in visiting his ex-wife in prison. It was from this relationship that a friendship developed among the three. Further, according to Martinez and Bushon, Villarreal suggested numerous illegal money-making schemes to them over the next few months, but that they refused to participate in each of them. However, shortly before the INS investigation began, Martinez and Bushon had become financially desperate, and for this reason agreed to participate in Villarreal's plan of producing false documents for aliens illegally in the United States. Bushon argues that the district court should have found that she was entrapped as a matter of law, because the evidence showed that Villarreal induced her to commit the crimes charged.

---

**3.** The record is not as clear as it could be with respect to whether the micro-recorder Villarreal wore was hidden. However, due to the fact that

the record states that Villarreal was *wearing* a *micro-* recorder, the implication is that the device was hidden from view.

The Government contends that although Villarreal was an informant who had been previously paid for information he furnished the Government, in the instant case he was acting entirely on his own during the preliminary contacts with Martinez and Bushon. This Court will assume without finding that Villarreal was a government agent during these preliminary contacts.

■ To rely on a defense of entrapment, a defendant must present evidence of inducement, "that Government conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it." *United States v. Johnson*, 872 F.2d 612, 620 (5th Cir.1989). The burden then shifts to the Government to show beyond a reasonable doubt that the defendant was predisposed to commit the offense. The main focus, however, is on the defendant's predisposition to commit the crime, not on the government agent's conduct. *Id.* at 620–21; *see Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). The question of entrapment is generally one for the jury. *Mathews*, 108 S.Ct. at 886. For a finding of entrapment as a matter of law, Bushon would have to show both inducement by Villarreal, and that no reasonable jury could have found from the evidence that Bushon was predisposed to commit the crime. *Johnson*, 872 F.2d at 621.

■ This Court determines that there was sufficient evidence from which a reasonable jury could conclude that Bushon was predisposed to commit the crimes charged. The tapes demonstrated Bushon's enthusiasm regarding her skills of copying and typing the forged documents, as well as her imagination which aimed for greater diversity in the projects, including other crimes involving falsifying security passes, concert tickets and producing currency. The district court did not err in failing to find that Bushon was entrapped as a matter of law.

Both Martinez and Bushon also argue that the district court failed to give a proper instruction on the issue of entrapment. The instruction which the district court gave was taken from the Fifth Circuit's *Pattern Jury Instructions, Criminal Cases*, Special Instruction 5, at 41 (1983),

and has been approved by this Court in other cases, most recently in *United States v. Johnson*, 872 F.2d at 622 (5th Cir.1989).

■ Martinez argues that the district court should have included the definition of inducement set forth in *United States v. Jackson*, 700 F.2d 181, 191 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983), as part of the definition of entrapment. The definition set forth in *Jackson*, however, allows a defendant to make a showing of government tactics such as persuasion, pleas based on need, sympathy or friendship, in order to *raise the issue* of entrapment before the jury. *Jackson* does not state that these are *elements* of entrapment to be included in a jury instruction. Bushon's challenges to the instruction are without merit.

### D. *Closing Argument Comments*

Martinez argues that the district court erred in failing to grant a mistrial based on several remarks made by prosecutor James Bock during his rebuttal closing argument. Many of Bock's statements were inappropriate, inflammatory and unprofessional. However, a reversal is required only if the remarks prejudicially affected the substantive rights of Martinez. "The determination of whether prosecutorial misconduct was harmless requires consideration of the prejudicial statements, the efficacy of any cautionary instructions given by the district court, and the strength of the admissible evidence of guilt." *United States v. Parker*, 877 F.2d 327, 332 (5th Cir.1989).

■ Martinez first states that Bock commented on Martinez's failure to testify when he said,

Now, folks, if you want to believe that, you can. You can go in that jury room, and I urge you, if you believe that garbage, you go in that jury room and you turn *them* loose. Or, at least, turn *her* loose. Because *she's* in here telling you about it.

Record Vol. 11 at 48 (emphasis added). Martinez argues that this statement suggests that Martinez should not have been aquitted because he failed to testify.

To reverse on the basis of the above quoted statement, this Court must find that

either (1) it was Bock's manifest intention to refer to the silence of Martinez, or (2) the remark was such that the jury would naturally and necessarily take it to be a comment on the defendant's silence. *United States v. Soudan,* 812 F.2d 920 (5th Cir.1986), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). If there was a plausible explanation for Bock's comment, then this Court may not find that Bock manifestly intended to comment on the defendant's silence. *United States v. Rochan,* 563 F.2d 1246 (5th Cir.1977).

The Government argues that the more plausible explanation is that Bock was merely focusing on the lack of credibility of Bushon's testimony. The context of the remark supports this contention. However, the remark could also have been construed by the jury as a comment on Martinez's silence at trial. This Court determines that Bock's remark was harmless beyond a reasonable doubt due to the evidence supporting the guilt of Martinez. The tapes strongly support the fact that Martinez had committed the crimes charged.

■■■ Martinez lists other remarks made by Bock. These include suggestions by Prosecutor Bock that defense counsel misled the jury on elements of the law, reference by Bock to Martinez's demeanor in court, and Bock's inflammatory rebuttal to defense counsel's use of a statement by Justice Frankfurter on the law of entrapment. Bock also indicated that the jurors would violate their oath to God if they aquitted Martinez and Bushon because the jury believed that the informant, Villarreal, was reprehensible. Bock further stated that if the jury were gullible enough to acquit Martinez and Bushon, Bock would like to sell them the Brooklyn Bridge. Counsel for Martinez objected to some but not all of these statements, and the district court did not give curative instructions as to any of them.[4]

As inappropriate and inflamatory as many of Prosecutor Bock's statements were, this Court determines that they do not cast doubt upon the accuracy of the verdict. As recited in section I of this opinion, the evidence presented to the jury clearly demonstrates the guilt of both Martinez and Bushon.

We note, however, that this Court has indicated its strong disapproval of statements similar to those of the prosecutor listed above. In fact, this Court has directed its disapproval specifically to Bock on other occasions. *United States v. McRae,* 593 F.2d 700 (5th Cir.1979); *United States v. Edwards,* 576 F.2d 1152 (5th Cir.1978). Even so, this Court must follow the rule stated in *Parker,* and look to the adequacy of the evidence presented and determine whether such evidence was strong enough to support a conviction. We determine that the evidence strongly supported the convictions of Martinez and Bushon, and Bock's inflammatory remarks were not so prejudicial as to require a reversal.

At oral argument, counsel for the Government stated that Bock had been reported to the Justice Department's Office of Professional Responsibility in connection with his conduct in the district court trial of the instant case. In view of the foregoing, this Court declines to initiate other disciplinary action, but we note that the district court is in a far better position to control the type of unwarranted and unprofessional conduct exhibited in this record.

Finally, Martinez contends that the district court erred in refusing to disclose reports within the Government's control. The district court examined these reports *in camera,* and Martinez has failed to show that the district court abused its discretion in ordering those reports sealed.

## III.  CONCLUSION

Finding no reversible error, we affirm.

AFFIRMED.

---

4.  In response to defense counsel's objection to Bock's remark regarding Justice Frankfurter, the district judge told the jury that each side could argue its own version of the law, but the district court would instruct the jury on the law to apply.