[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2006
THOMAS  K. KAHN
CLERK

_____

No. 04-15779
Non-Argument Calendar

_____

D. C. Docket No. 03-20590-CR-WMH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM SUAREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 17, 2006)**

Before ANDERSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-Appellant, William Suarez, appeals his convictions for importation of one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 952, and possession with intent to distribute one kilogram or more of a mixture and substance containing a detectible amount of heroin, in violation of 21 U.S.C. § 841. On appeal, Suarez argues that the cumulative effect of the following errors warrant reversal of his convictions and a new trial: (1) the district court's denial of his motion to suppress testimony that, in the course of his detention and interview with customs officers, he lowered his head; (2) the district court's denial of his motion for a mistrial following a witness's comment on his decision to remain silent after receiving his Miranda warnings; (3) the district court's admission into evidence of a chart offered by the government that detailed money Suarez received and spent; (4) the district court's and prosecutor's comments during closing arguments; and (5) the district court's instruction to the jury regarding deliberate ignorance. For the reasons that follow, we affirm.

## I. Background

At Suarez's first trial, U.S. Customs Agent Glenn Townes testified that he was working as a roving agent at Miami International Airport when he randomly selected Suarez for inspection. Suarez had arrived on a flight from Trinidad, en route to New York. Townes approached Suarez, asked for his passport and ticket, and asked him

2

some general questions. Townes became suspicious because of Suarez's behavior and answers and selected him for secondary inspection in another room, where he opened Suarez's suitcase. Townes noted that the bag felt heavy after its contents were removed and that the bottom of the bag was hard and smelled of glue. He performed a field test for heroin, which yielded positive results. Townes indicated to Suarez that the suitcase tested positive and that Suarez was under arrest, and Suarez, according to Townes's testimony, "dropped his head as if to say . . . you got me." Defense counsel objected to this testimony and moved for a mistrial, arguing that in taking Suarez to another room Townes had functionally arrested him, that Townes's statement regarding the heroin test constituted an interrogation and that Suarez had not been given his Miranda warnings. The court granted the motion, though explaining that Townes's statement did not constitute an interrogation.

Prior to his second trial, Suarez moved to suppress any testimony relating to his conduct in dropping his head. He argued that the conduct was testimonial and had been given, prior to any Miranda warnings, in response to the functional equivalent of an interrogation. Suarez also sought to exclude any reference of his failure to speak, arguing that it is impermissible to comment on his silence regardless of whether he had received his Miranda warnings. The district court denied the motion.

At Suarez's second trial, Townes again testified regarding the circumstances

of Suarez's arrest. Townes testified that he explained to Suarez what he was doing as he performed the heroin field test and that when he indicated to Suarez that the test was positive, Suarez lowered his head. Defense counsel objected once more to this testimony, and the court overruled the objection.

The government next called Customs Agent Roy Rutherford, who testified that Suarez had been given his Miranda warnings and invoked his right to remain silent. Defense counsel objected and moved for a mistrial based on the witness's comment. In the alternative, Suarez requested that Rutherford be stricken as a witness. The government asserted that the error was harmless and, after hearing arguments from both sides, the court determined that it would be sufficient to strike the testimony, issue a curative instruction to the jury, and poll the jury as to whether they would be able to ignore the statement. The court then instructed the jury as follows: "due to a misunderstanding on the part of Agent Rutherford, his prior testimony should be disregarded in its entirety. I therefore instruct you that you should not consider any of Agent Rutherford's prior testimony. We will begin anew . . . . Can you all do that?" The jurors responded in the affirmative.

Rutherford returned to the stand and testified that Suarez had receipts from five wire transfers, three of which were addressed to Suarez, the other two to his traveling companion, Anthony Ortiz. The government then proffered as evidence a composite

4

chart (with notations) of the expenditures and wire transfers to show the money Suarez obtained and the amount he spent. Defense counsel objected to the introduction of the chart, arguing that the chart was an improper summary of the government's theory of its case that could be used for demonstrative purposes, thereby depriving Suarez of a fair trial. The court overruled that objection.

Rodney Crawford, a DEA agent, testified that the heroin found in Suarez's suitcase would bring in between $100,000 and $355,500, depending on whether it was sold by the kilogram, ounce or gram.

The government introduced into evidence a videotape made by Suarez of his trip to Trinidad. The video showed Suarez and Ortiz in their hotel room, swimming in the hotel pool, playing in the hotel pool hall, and traveling by taxi; the video also contained footage of a park in front of the hotel and an iguana.

The record reveals that Suarez lives in the Bronx, New York, that he is married with a child and that he is an auto mechanic. An unidentified Colombian purchased airline tickets to Trinidad for both Suarez and Ortiz for over $1,000 in cash. The travel agency received payment less than two weeks prior to their departure, and Suarez's airline ticket and passport were issued one day before his departure date. The jury also heard testimony to the effect that while Suarez checked one bag and Ortiz did not check a bag on the way to Trinidad, both checked bags on the return

journey. Furthermore, the suitcase that tested positive for heroin was not the same suitcase that appeared on the video taken by Suarez and Ortiz in their hotel room.

The government rested its case, and Suarez moved for judgment of acquittal, which was refused. Suarez introduced receipts and wire transfers found in his suitcase and bearing Ortiz's name to establish his theory of defense, that Ortiz placed the heroin in his suitcase.

During closing arguments, the government argued that the only issue in the case was whether Suarez knew that he was carrying the heroin. The government argued that Suarez was aware that he carried the heroin because: (1) the bag was heavy and smelled of glue; (2) given the value of the drugs, one would not expect the traffickers to give them to someone who was unaware of what he carried; (3) the smuggler is always in on the scheme; and (4) Suarez could not have been on vacation as he claimed because he traveled with Ortiz rather than his family, the trip was last minute, they stayed in an expensive hotel though Suarez had no money, and a third party paid for his ticket.[1]

---

[1] The record reveals some confusion regarding the identity of the person who paid for the two tickets to Trinidad. The travel agent who sold the tickets testified that a third person who was not going to travel purchased the tickets, but that the third person gave his name as Anthony Ortiz. She also testified that she believed the payer had a Colombian accent.

Defense counsel argued that no evidence existed suggesting that Suarez had not been vacationing in Trinidad. At that point, the district court commented that defense counsel "was bringing nonsense into the courtroom." Defense counsel objected to the word "nonsense," and the district court had it stricken from the record, though admonishing defense counsel not to stray too far from the record. Defense counsel then informed the jury that Ortiz had changed the lining of the suitcase, but the court objected because there was no evidence in the record to support that claim. Defense counsel responded that he was merely presenting his theory of the case, but the court informed him that there was no evidence to support his assertions.

In rebuttal argument, the prosecutor stated that defense counsel had made misstatements to the jury. Defense counsel objected to the term "misstatement," but the court overruled that objection. The prosecutor then characterized defense counsel's arguments as "a ridiculous story", "crazy", "unacceptable", "ludicrous", and "mak[ing] no sense". Defense counsel objected again, and the court again overruled the objection.

The court instructed the jurors that to find Suarez guilty, they must find that he knowingly possessed the drugs. The court then explained that "knowingly" could encompass Suarez's deliberate ignorance as to whether he possessed the drugs. Suarez objected to the deliberate ignorance instruction and renewed his objection to

the admission of the government's chart. The court overruled both objections. The court then reminded the jury that the lawyers' statements were not evidence and instructed them that "except for my instruction to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision concerning the facts." The jury convicted Suarez on both counts.

## II. Standard of Review

"In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997). Each claim is also considered "individually to assess whether . . . assertions of error are correct." Id. Reversal is not warranted where error is harmless beyond a reasonable doubt "if there is no 'reasonable probability that the evidence complained of might have contributed to the conviction.'" United States v. Turner, 871 F.2d 1574, 1581-82 (11th Cir. 1989), (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230 (1963)).

## III. Discussion

### A. Motion to Suppress

Suarez's arguments are two-fold: First, he contends that Townes's conduct was the functional equivalent of an interrogation because it was designed to elicit an incriminating response. See Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct.

8

1682 (1980). Second, he claims that any reference to his dropping his head was inadmissible because it was a comment on his right to remain silent. Both arguments are without merit.

In reviewing a district court's denial of a motion to suppress, this Court reviews factual findings for clear error and the application of the law to those facts de novo. United States v. Acosta, 363 F.3d 1141, 1144 (11th Cir. 2004). "Whether a person was in custody and entitled to Miranda warnings is a mixed question of law and fact; [this Court] review[s] the district court's factual findings on the matter for clear error and its legal conclusions de novo." United States v. McDowell, 250 F.3d 1354, 1361 (11th Cir. 2001).

In Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), the Supreme Court held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The government concedes that Suarez was in custody, but disputes that Suarez was interrogated.

9

The Supreme Court has explained that the concern motivating Miranda was that the "'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." Innis, 446 U.S. at 299. The Court then clarified that "questioning" encompasses both "express questioning" and its "functional equivalent." Id. at 300-01. The Court defined the functional equivalent of an interrogation as "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301 (emphasis added).

In determining whether an exchange was the functional equivalent of an interrogation, the focus of the inquiry is the perception of the suspect, not the intent of the police. Arizona v. Mauro, 481 U.S. 520, 107 S. Ct. 1931 (1987). This Court has distinguished a custodial interrogation from the "traditional investigatory functions" of police where the compulsive atmosphere triggering Miranda is absent. Sullivan v. State of Alabama, 666 F.2d 478, 482 (11th Cir. 1982). Specifically, this Court has also considered whether a seizure involved an "unusual degree of force" to determine whether police partook in the functional equivalent of interrogation. United States v. Glen-Archila, 677 F.2d 809, 815 (11th Cir. 1982). Moreover,

10

"'on-the-scene questioning' concerning the facts and circumstances surrounding a crime or other general questioning of citizens during the fact-finding process do not trigger Miranda warnings." Garcia v. Singletary, 13 F.3d 1487, 1489 (11th Cir. 1994).

First, Townes's statement regarding why he was putting Suarez under arrest was not the functional equivalent of an interrogation. The statement merely gave Suarez the basis for his arrest and was not intended to elicit an incriminating response. Second, the district court did not err in allowing testimony regarding Suarez's dropping his head upon hearing the result of the heroin field test. We have held that the government may comment on a defendant's silence after arrest but before Miranda warnings were given. United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991). The case cited by Suarez for the contrary proposition, United States v. Velarde-Gomez, 269 F.3d 1023 (9th Cir. 2001), is in direct conflict with the law of this Circuit. See United States v. Frazier, 394 F.3d 612 (8th Cir.) (recognizing circuit split), denial of rehearing en banc, 408 F.3d 1102, 1111 (8th Cir. 2005). Accordingly, we hold that the district court did not err in denying Suarez's motion to suppress and allowing the government to mention Suarez's pre-Miranda reaction to Townes's statement during the arrest.

B. Motion for a Mistrial

11

Suarez next argues that the court erred in denying his motion for a mistrial following Rutherford's testimony regarding his invocation of his right to remain silent after receiving his Miranda warnings. Suarez argues that the comment was prejudicial regardless of the curative measures taken by the district court.

We review a district court's denial of a motion for mistrial for abuse of discretion. United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). "The 'constitutional harmless error' standard applies to review of a denial of a motion for mistrial on the basis of an alleged violation of Fifth Amendment Right against self incrimination." United States v. Guerra, 293 F.3d 1279, 1289 (11th Cir. 2001). Because Suarez did not request a jury instruction regarding the summary chart at trial, we review the omission of such an instruction for plain error. See United States v. Haynes, 573 F.2d 236, 241 n.8 (5th Cir. 1978).[2]

In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court forbade the use, at trial, of a defendant's post-arrest, post-Miranda warning decision to remain silent. Id. at 619. Because the government concedes that Rutherford's comment regarding Suarez's silence was improper, we turn immediately

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to whether the comment was harmless. See United States v. Smith, 635 F.2d 411, 413 (11th Cir. 1981).

This Court has repeatedly held Doyle error harmless where, as here, the district court takes remedial measures and the comment was isolated, unsolicited, and eclipsed by other substantial evidence of the defendant's guilt. See United States v. Gabay, 923 F.2d 1536, 1541 (11th Cir.1991); United States v. Gonzalez, 921 F.2d 1530, 1549 50 (11th Cir.1991) (finding the prosecutor's single reference to defendant's post Miranda silence harmless where "[t]he prosecutor did not return to this testimony either while questioning other witnesses or upon closing argument," the state's evidence was "otherwise strong to clearly indicate [the defendant's] involvement," and the improper comment "was quickly objected to and a curative instruction was promptly given to the jury"); United States v. Ruz Salazar, 764 F.2d 1433, 1437 (11th Cir.1985); United States v. Smith, 635 F.2d 411, 413 14 (5th Cir. Unit B 1981) (finding a single comment on defendant's silence harmless where the prosecutor "did not 'focus on' or 'highlight' the defendant's silence in his examination of the witnesses or in his closing remarks," the court immediately gave a curative instruction, and the evidence of guilt was otherwise overwhelming). Here, Agent Rutherford's comment was the only reference to Suarez's post-Miranda silence; he did not mention it again when he was recalled to the stand. The

13

prosecutor did not mention the subject at any point in the trial, and the court issued a curative instruction and polled the jury. We presume that the jury followed that instruction. United States v. Brown, 983 F.2d 201, 202 (11th Cir. 1993).

Apart from the singularity of Rutherford's comment and the curative measures taken by the district court, a new trial is also inappropriate given the other evidence of Suarez's guilt, including the fact that the drugs were found in a suitcase that he admitted to packing himself and the circumstances of his trip to Trinidad. Accordingly, we hold that the district court did not err in denying Suarez's motion for a mistrial.

C. Admission of Summary Chart

Suarez argues that the district court erred by admitting the government's chart because the chart combined other exhibits in a manner that underscored the government's theory of the case.

This Court reviews a district court's admission of summary charts for abuse of discretion. United States v. Richardson, 233 F.3d 1285, 1293 (11th Cir. 2000).

The Federal Rules of Evidence permit a district court to admit summary charts. See Fed. R. Evid. 1006. "Nevertheless, this Circuit has noted that summary charts are to be used with caution, due to their potential for abuse [and] a trial court is charged

with grave responsibilities to make certain that an accused is not unjustly convicted in a 'trial by charts.'" Richardson, 233 F.3d at 1293 (citations omitted).

This Court has held that charts incorporating certain assumptions are admissible "so long as supporting evidence has been presented previously to the jury … and where the court has 'made it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence.'" Id. Moreover, "where the defense has the opportunity to cross-examine a witness concerning the disputed issue and to present its own version of the case, the likelihood of any error in admitting summary evidence diminishes." Id.

Here, the government's summary chart contained no assumptions, and thus no jury instruction was required. In addition, the underlying evidence was admitted, the chart was accompanied by Rutherford's testimony, and Suarez had an opportunity to cross-examine Rutherford. Accordingly, the district court did not abuse its discretion in admitting the government's chart.

D. Prosecutor's and Court's Statements

Suarez argues that the prosecutor's and district court's comments during closing arguments deprived him of a fair trial by preventing him from presenting a theory of defense based or arguing his innocence on the basis of circumstantial

evidence. He argues that the cumulative effect of the court's errors rendered his trial fundamentally unfair.

This Court will not reverse a guilty verdict based on a district court's allegedly prejudicial comments "unless the comments of the Trial Judge are so prejudicial as to amount to a denial of a fair trial. Furthermore, '[a] clear effect on the jury is required to reverse for comment by the trial judge.'" United States v. Morales, 868 F.2d 1562, 1576 (11th Cir. 1989). This Court has refused reversal where "(1) the comments occupied but a few seconds of a lengthy trial; (2) the comments were directed to defense counsel rather than to the jury; and (3) the Trial Judge advised the jury to disregard any intimation by the Court relating to the facts of the case." Id. at 1577 (internal quotations omitted).

As in Morales, here Suarez complains of a few comments made by the district court in the course of a four day trial. Those comments were directed to defense counsel, not the jury, and the court instructed the jury not to consider the court's rulings as an indication of Suarez's guilt. Thus, even if the court's statements were improper, the jury instruction cured the error. See Morales, 868 F.2d at 1577.

Suarez's assertion that the court prevented him from raising a defense based on circumstantial evidence is without merit. The trial transcript reveals that defense

16

counsel did not merely encourage the jury to make inferences, but instead put forth facts not in evidence. Accordingly, the court's rulings were proper.

Determinations of prosecutorial misconduct involve mixed questions of law and fact, which this Court reviews de novo. United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997). Even if a prosecutor's remark is prejudicial, a curative instruction may render the remark harmless. United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997). Prosecutorial misconduct will be the basis for reversal only if, in light of the entire trial and any curative instructions, the misconduct prejudicially affected the defendant's substantial rights. United States v. Hasner, 340 F.3d 1261, 1275 (11th Cir. 2003), cert. denied, 125 S.Ct. 38 (2004). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998). When the record contains sufficient independent evidence of guilt, any error is harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir. 1996).

This Court has held that it is not inflammatory for a prosecutor to refer to the theory of defense as 'incredible and ludicrous.'" United States v. Willis, 759 F.2d 1486, 1502 (11th Cir. 1985). Even if the prosecutor's statements were improper, reversal is not warranted unless the entire trial is so replete with errors that Suarez

was denied a fair trial. See United States v. McClain, 823 F.2d 1457, 1462 (11th Cir. 1987) (holding that prosecutor's misconduct in disparaging defense counsel was not a sufficient basis for reversing, though concluding that reversal was warranted in light of the cumulative effect of all errors in the case), overruled on other grounds as recognized by United States v. Watson, 866 F.2d 381, 385 n.3 (11th Cir. 1989). As the cumulative effect of the alleged errors is insufficient to render Suarez's trial unfair, reversal is unwarranted.

E. Instruction on Deliberate Ignorance

Suarez argues that the district court improperly instructed the jury regarding deliberate ignorance because the evidence in the record pointed to actual knowledge, and not deliberate ignorance.

This Court reviews the propriety of jury instructions de novo. "The district court has broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." United States v. Perez-Tosta, 36 F.3d 1552, 1564 (11th Cir. 1994). This Court "will not reverse a conviction unless we find that issues of law were presented inaccurately or the charge improperly guided the jury in such a substantial way as to violate due process." Id.

"An instruction on deliberate ignorance is appropriate only if it is shown that the defendant was aware of a high probability of the fact in question and that the

18

defendant 'purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.'" <u>Rivera</u>, 944 F.2d at 1570-71. However, courts "have properly cautioned that such a charge should not be given in every case in which a defendant claims a lack of knowledge, 'but only in those comparatively rare cases where . . . there are facts that point in the direction of deliberate ignorance.'" <u>Id.</u> at 1571. Moreover, "a district court should not instruct the jury on 'deliberate ignorance' when the relevant evidence points only to actual knowledge, rather than deliberate avoidance." <u>Id.</u>

Even if Suarez is correct in arguing that the evidence at trial pointed to actual knowledge and not deliberate ignorance, however, that error is harmless, for substantial evidence points to Suarez's knowledge of the scheme. Suarez confirmed that he packed the suitcase in which the heroin was found, and testimony suggests that he was not surprised when the drugs were found.

For the foregoing reasons, we AFFIRM Suarez's convictions.